Thomas C. SCHROEDER, Petitioner,

v.

TEXAS IRON WORKS,
INC., Respondent.

No. C–8843.

Supreme Court of Texas.

June 12, 1991.
Rehearing Overruled Sept. 18, 1991.

Bob J. Spann, Spann & Smith, P.C., Corpus Christi, for petitioner.

James J. Loeffler, Roxella T. Cavazos, Chamberlain, Hrdlicka, White, Johnson & Williams, Houston, for respondent.

## OPINION

PHILLIPS, Chief Justice.

The primary issue in this case is whether exhaustion of administrative remedies is a prerequisite to bringing a civil action for age discrimination in employment. Thomas Schroeder sued his former employer, Texas Iron Works, Inc. ("TIW"), for damages for wrongful discharge, asserting causes of action for age discrimination, breach of contract and misrepresentation. The trial court granted summary judgment in favor of the employer on all claims. The court of appeals affirmed. 769 S.W.2d 625 (Tex.App.—Corpus Christi 1989). We affirm the judgment of the court of appeals.

Because this case involves our review of a summary judgment, we take as true the facts most favorable to Schroeder, principally his deposition testimony. TIW employed Schroeder from 1943 to 1984 (except for two years when he was in the Navy). No written employment contract between Schroeder and TIW was ever executed. Schroeder started as a helper and then worked variously as a machinist, mechanic, welder and shop foreman. He transferred to and became manager of TIW's Corpus Christi plant in 1980.

In 1982 Schroeder purchased a lot on Lake Mathis in San Patricio County for the purpose of building a retirement home. After building a seawall and pier, digging a well and obtaining electricity for the new home, he sold his existing home in Corpus Christi in November 1983.

In November or December 1983, Schroeder telephoned his supervisor in Houston, Gary Jordan (TIW's vice-president in charge of manufacturing). Schroeder told Jordan he knew the company had financial difficulties, and he asked about his job. He told Jordan he was about to build his home and "did not want to just get it built or just moved in and get laid-off." According to Schroeder, Jordan replied: "No, don't worry about that, go ahead and build it."

Shortly thereafter, Schroeder telephoned Jordan again. Schroeder asked to speak to Steve Pearce, TIW's president, to ask about his job and building his house. Jordan told him that "he had talked to Steve about it and Steve said to go ahead and build it."

There was no mention in these discussions of employing Schroeder for any specific time period. Schroeder's own idea, however, was that he would be employed by TIW for another eight to ten years, until he reached retirement age.

When TIW's Corpus Christi plant ceased operations in early 1984 because of the oil industry decline, TIW offered and Schroeder accepted a position in sales and service as operations manager. Schroeder then completed his retirement home and occupied it in July 1984. The next month, TIW notified Schroeder that he would be laid off on November 1, 1984, for economic reasons.

Schroeder brought this action against TIW in August 1985. He alleged that contrary to TIW's assurances about the security of his job, he was laid off after 41 years of employment while younger men were kept on TIW's payroll. He also alleged that in answer to his inquiries he was told by TIW that his job was secure, and in reliance on such statements he built his

retirement home.[1]

TIW moved for partial summary judgment on the age discrimination claim on the grounds that (1) Schroeder had failed to file a complaint with the Texas Commission on Human Rights ("Commission") as required by the Commission on Human Rights Act, Tex.Rev.Civ.Stat.Ann. art. 5221k (Vernon 1987) ("CHRA"), and (2) the CHRA's limitations period for filing suit based upon such a complaint had expired.[2] The trial court granted summary judgment on these grounds and dismissed the age discrimination claim.[3] The court of appeals affirmed, holding that a person who seeks relief under the CHRA must first file a complaint with the Commission, which Schroeder failed to do.

■ Schroeder asserts that the trial court and the court of appeals erred in so construing the CHRA. We disagree. We hold that a person claiming a CHRA violation must first exhaust the CHRA's administrative remedies prior to bringing a civil action for such violation.

Our analysis of the CHRA begins with its general purposes, as set forth in § 1.02(1). These purposes include correlation of state law with federal law in the area of discrimination in employment. One purpose of the CHRA is "to provide for the execution of the policies embodied in Title VII of the federal Civil Rights Act of 1964, as amended (42 U.S.C. Section 2000e et seq.)." Title VII prohibits employment discrimination on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e–2(a). A second purpose of the CHRA is "to create an authority that meets the criteria" under section 2000e–5(c) of Title VII and section 633 of the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), which prohibits discrimination in employment against persons 40 years of age or older. The Equal Employment Opportunity Commission ("EEOC") is the federal agency responsible for enforcing Title VII and the ADEA.

Both 42 U.S.C. § 2000e–5(c) and 29 U.S.C. § 633 provide that if a state has its own anti-discrimination laws and fair employment practice agency, the EEOC must defer its processing of a discrimination complaint until the state has had at least 60 days to investigate and resolve it. Thus, one of the CHRA's purposes was to create a Texas "deferral agency" (i.e., one that the EEOC would defer to) so that the investigation and resolution of employment discrimination complaints could be handled at the state level.[4]

■ The CHRA establishes a comprehensive administrative review system to carry out the policies embodied in Title VII. It creates the Commission and describes its powers; prohibits various "unlawful employment practices";[5] provides for admin-

1. Schroeder states in his application for writ of error that there was an agreement by TIW not to terminate his employment because of the "oil slump," and he bases part of his argument on such purported agreement. However, there is no summary judgment evidence that any statement to such effect was ever made to Schroeder. Schroeder also relies on an alleged statement by TIW's president Steven Pearce that he was going to keep his managers because they were too hard to come by. However, Schroeder admitted that at no time did he personally ask Pearce about his job.

2. Although Schroeder's Original Petition did not specify the basis of his age discrimination claim, he indicated in his response to TIW's motion for partial summary judgment that such claim was based on the CHRA.

3. Schroeder admitted in his deposition testimony that he had not filed a complaint with the Commission or with any other agency.

4. CHRA § 10.05 (entitled "Conformity with federal statutes") confirms this purpose:

    If any provision of this Act is held by the Equal Employment Opportunity Commission to disqualify the Commission on Human Rights as a deferral agency or for federal funds, the Commission on Human Rights is hereby authorized to administer this Act so as to qualify for deferral status until such time as the legislature meets in its next session and has an opportunity to amend this Act.

5. CHRA § 5.01 provides that it is an "unlawful employment practice" for an employer:

    (1) to fail or refuse to hire or to discharge an individual or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, national origin, or age; or

    (2) to limit, segregate, or classify an employee or applicant for employment in a way that

istrative review of complaints of such practices; and provides for judicial review of administrative decisions. §§ 3.01 et seq., 5.01 et seq., 6.01, and 7.01. Under CHRA Article 6, a person claiming to be aggrieved by an unlawful employment practice may file a complaint with the Commission. Such a complaint must be filed within 180 days after the date the alleged practice occurred. § 6.01(a). This time limit has been held to be mandatory and jurisdictional. *See Green v. Aluminum Co. of America,* 760 S.W.2d 378, 380 (Tex.App.—Austin 1988, no writ).

After the complaint is filed, the Commission is required to invite the complainant and the respondent to try to resolve their dispute voluntarily before making an investigation. If the complaint is not voluntarily resolved, the Commission then conducts its investigation. § 6.01(a). If it finds that there is reasonable cause to believe that the respondent has engaged in an unlawful employment practice, the Commission must try to eliminate such practice by "informal methods of conference, conciliation, and persuasion." § 6.01(c). Thus, the CHRA clearly encourages compliance through voluntary resolution, conference, conciliation and persuasion—informal processes other than litigation.[6]

CHRA Article 7 provides for judicial enforcement. If the Commission finds reasonable cause to believe that an unlawful employment practice has occurred, and if efforts to resolve the matter through conciliation have been unsuccessful, the Commission may bring a civil action against the respondent. If the Commission dismisses a complaint, or if within 180 days after the complaint was filed the Commission has not filed a civil action or successfully negotiat-

ed a conciliation agreement, the Commission shall so inform the complainant. The complainant may request from the Commission a written notice of the complainant's right to file a civil action. After receipt of this notice, the complainant has 60 days in which to bring a civil action against the respondent. No civil action may be brought under the CHRA more than one year after the filing of the complaint to which the action relates. § 7.01(a).[7]

Schroeder contends that a party claiming a violation of the CHRA may at its option proceed under either the administrative review procedures in Article 6 or the judicial review procedures in Article 7. He relies on § 6.01(a), which provides in part as follows:

A person claiming to be aggrieved by an unlawful employment practice, or that person's agent, *may* file with the commission a complaint ... stating that an unlawful employment practice has been committed. . . .

(Emphasis added). Schroeder argues that the word "may" in this subsection indicates a legislative intention for the Commission to be optional, not an absolute prerequisite to filing a civil action. However, for reasons explained below, the use of the word "may" indicates only that a person who believes a violation of the CHRA has occurred may, but is not obligated to, seek redress for such violation.

Schroeder also relies on § 6.01(f), which provides as follows:

No person who has initiated any action in a court of competent jurisdiction or who has an action pending before any administrative agency under any other law or any local ordinance of any political subdivision of the state based on an act that

---

would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee because of race, color, disability, religion, sex, national origin, or age.

6. The CHRA's administrative review procedures are similar to those of Title VII. Section 2000e–5(b) provides that if, after investigation, the EEOC determines that reasonable cause exists, the EEOC "shall endeavor to eliminate any such alleged unlawful employment practice by infor-

mal methods of conference, conciliation, and persuasion."

7. The Legislature added § 7.01(i) in 1989, which provides that the Commission's failure to issue the notice of the complainant's right to file a civil action does not affect his right under § 7.01(a) to bring a civil action against the respondent. Acts 1989, 71st Leg., ch. 1186, § 19, effective September 1, 1989. Tex.Rev.Civ.Stat. Ann. art. 5221k, § 7.01(i) (Vernon 1991 Supp.).

would be an unlawful employment practice under this article may file a complaint under this section with respect to the same grievance.

Schroeder argues that this provision means a party cannot file a complaint with the Commission after filing a civil action, confirming his view that litigation without prior administrative review is an optional procedure. However, this subsection is inapplicable. Section 6.01(f) precludes filing a complaint with the Commission where there are proceedings already pending "under any other law or any local ordinance." [8] Schroeder's claim is based on the CHRA, not on any other law or local ordinance.

Schroeder argues that if the Legislature had intended to require exhaustion of administrative remedies in the CHRA, it could have expressly so provided. He points out that the ADEA contains an express exhaustion requirement in 29 U.S.C. § 626(d).[9] We agree with Schroeder that the CHRA could have been clearer, but we nevertheless believe from the statute as a whole that the legislative intent is apparent.

Construing the CHRA to require exhaustion is consistent with its purpose to provide for the execution of the policies embodied in Title VII, 42 U.S.C. § 2000e et seq. Those policies include administrative procedures involving informal conference, conciliation and persuasion, as well as judicial review of administrative action. Another important policy of Title VII is exhaustion of administrative remedies prior to litigation. Title VII, like the CHRA, does not expressly state that an aggrieved person may not bring a civil action under Title VII without first filing a charge with

the EEOC. However, the United States Supreme Court has made it clear that Title VII includes such a requirement. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973); *Love v. Pullman Co.*, 404 U.S. 522, 523, 92 S.Ct. 616, 617, 30 L.Ed.2d 679 (1972).

Moreover, various provisions of the CHRA strongly indicate a requirement of mandatory exhaustion of administrative remedies. For example, § 701(a)'s provisions concerning the time for bringing a civil action and the party against whom a civil action may be brought make it clear that filing a complaint with the Commission is a prerequisite to such an action:

> Within 60 days *after the date of receipt of the notice,* a civil action may be brought by the complainant *against the respondent named in the charge.* ...
> In no event may any action be brought pursuant to this article more than one year after the date of the *filing of the complaint* to which the action relates.[10]

(Emphasis added). Thus, a complainant may only bring an action against a respondent named in the charge or complaint filed with the Commission. The statute of limitations for such action runs from the date of filing the complaint with the Commission.

Further, § 7.01(d)(1) provides that a court may award equitable relief including back pay, but that "back pay liability may not accrue for any date more than two years *before the date of filing of a complaint with the commission* ..." (empha-

---

**8.** The phrase "under any other law or any local ordinance" modifies *both* the clause, "No person who has initiated any action in a court of competent jurisdiction", and the clause, "who has an action pending before any administrative agency."

**9.** § 626(d) provides in pertinent part as follows:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission....

Schroeder argues further that the Texas Lemon Law (enacted the same year as the CHRA) expressly provides for exhaustion of administrative remedies prior to litigation, and thus the Legislature knew how to impose such a requirement where intended. Tex.Rev.Civ.Stat. art. 4413(36), § 6.07 (Vernon Supp.1991). This argument is unpersuasive in light of the unique purposes and policies of the CHRA, including correlation with specified federal law.

**10.** This one year limitation period for bringing the civil action is also mandatory and jurisdictional. *See Green,* 760 S.W.2d at 380.

sis added). Finally, § 7.01(h) provides that all judicial proceedings under the CHRA shall be by trial de novo, and no Commission findings, recommendations, determinations, or other actions are binding on any court. Thus, all of the CHRA's references to civil actions clearly contemplate and require prior administrative action.

Courts in states with fair employment laws comparable to Title VII and the CHRA have consistently construed such laws to require exhaustion of administrative remedies prior to instituting a civil action.[11] *See Miller v. United Airlines, Inc.,* 174 Cal.App.3d 878, 890, 220 Cal.Rptr. 684, 691–92 (1985); *Van Scoyk v. St. Mary's Assumption Parochial School,* 224 Kan. 304, 306–07, 580 P.2d 1315, 1316–17 (1978); *Melley v. Gillette Corp.,* 19 Mass. App. 511, 513–14, 475 N.E.2d 1227, 1227–28 (1985); *Jaramillo v. J.C. Penney Co., Inc.,* 102 N.M. 272, 272–73, 694 P.2d 528, 528–29 (Ct.App.1985).[12]

Similarly, we conclude that exhaustion of administrative remedies is a mandatory prerequisite to filing a civil action alleging violations of the CHRA. The CHRA does not provide an unconditional private right of action. Schroeder's failure to file a complaint and to pursue his administrative remedies with the Commission creates a jurisdictional bar to his age discrimination claim in this case. *See Green,* 760 S.W.2d at 380 ("This suit is based entirely on a statutory cause of action arising under the [CHRA].

The statutory provisions are, therefore, mandatory and exclusive and must be followed or the action is not maintainable because of a lack of jurisdiction."); *Grounds v. Tolar Independent School District,* 707 S.W.2d 889, 891–92 (Tex. 1986); *Bushell v. Dean,* 781 S.W.2d 652 (Tex.App.—Austin 1989), *rev'd on other grounds,* 34 Tex.Sup.Ct.J. 339, 803 S.W.2d 711 (Tex.1991) ("Filing a complaint under [CHRA] § 6.01(a) is a mandatory prerequisite to a sexual harassment suit.").

■ The trial court also granted summary judgment against Schroeder on his misrepresentation claim. The court of appeals affirmed, holding that any claim of fraud was negated by Schroeder and his counsel during Schroeder's deposition, in which they agreed there was no fraud or misstatement by TIW. We agree with the holding of the court of appeals.

Finally, the trial court granted summary judgment in favor of TIW on Schroeder's breach of contract claim. It held that Schroeder did not have an oral contract which modified his employment at will status, and any such alleged oral contract lacked consideration and would be barred by the statute of frauds.[13] The court of appeals affirmed, holding that the alleged oral employment agreement is unenforceable under the statute of frauds. Tex. Bus. & Com.Code Ann. § 26.01(b)(6).

---

**11.** In contrast to Title VII and the CHRA, some states have statutes which permit parties to select either an administrative or a judicial remedy. If the administrative remedy is selected, it must be exhausted. *See, e.g.,* Minn.Stat. § 363.-06, subd. 1; N.Y.Exec.Law. § 297(9).

**12.** *Jaramillo's* facts are similar to those of the present case. There, the plaintiff filed suit alleging discrimination under the New Mexico Human Rights Act, without first filing an administrative complaint. The plaintiff relied on statutory language similar to that of CHRA § 6.01(a):

Any person claiming to be aggrieved by an unlawful discriminatory practice ... *may* file with the commission a written complaint....
(Emphasis added). Like Schroeder, the plaintiff argued that the statute's "use of 'may' instead of 'shall' shows the legislative intent that the procedure not be mandatory." The appellate court rejected that argument after review-

ing the "general scheme" of the New Mexico statute. The court concluded that "[t]he comprehensive nature of the Act supports the conclusion that the legislature intended that the grievance procedure is mandatory when unlawful discriminatory practices are alleged." 694 P.2d at 528–29.

**13.** Schroeder alleges in his application for writ of error, without argument, that the granting of summary judgment on his breach of contract claim was error because pleadings may not be tested as to whether they state a cause of action by a motion for summary judgment. TIW did not base its motion for summary judgment on the failure of Schroeder's pleadings to state a cause of action, however. Schroeder acknowledged during oral argument that summary judgment was granted on the merits, and not for failure to replead or to amend the pleadings. Thus, repleading would not have avoided summary judgment.

Schroeder argues that oral statements by his TIW supervisor, discussed in the statement of facts above, modified his employment at will status. Such statements, according to Schroeder, created an employment contract with TIW which was no longer terminable at will, and his subsequent layoff breached that contract. Subject to one narrow exception, Texas follows the doctrine of employment at will, under which employment for an indefinite term may be terminated at will and without cause. *Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723 (Tex.1990); *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 734 (Tex.1985); *East Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 75, 10 S.W. 99, 102 (1888). However, we do not reach the question whether the alleged statements had the effect urged by Schroeder.

According to Schroeder's deposition testimony, his idea was that as a result of the oral statements, he would be employed by TIW for another eight to ten years, until retirement. However, any alleged oral agreement to such effect was not capable of performance within one year and would be unenforceable under the statute of frauds. Tex. Bus. & Com.Code Ann. § 26.01(b)(6); *Benoit v. Polysar Gulf Coast, Inc.*, 728 S.W.2d 403, 406 (Tex. App.—Beaumont 1987, writ ref'd n.r.e.); *Webber v. M.W. Kellogg Co.*, 720 S.W.2d 124, 127 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Molder v. Southwestern Bell Telephone Co.*, 665 S.W.2d 175, 177 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

Schroeder also invokes the doctrine of equitable estoppel to support his contention that his employment at will status was modified. To establish an equitable estoppel, Schroeder must prove (1) a false representation or concealment of material facts, (2) made with knowledge, actual or constructive, of those facts, (3) with the intention that it should be acted on, (4) to a party without knowledge, or the means of knowledge of those facts, (5) who detrimentally relied upon the misrepresentation. *Gulbenkian v. Penn*, 151 Tex. 412, 418, 252 S.W.2d 929, 932 (1952).

The court of appeals correctly held that the summary judgment record negates key elements of equitable estoppel. Schroeder's application for writ of error also states: "It was then and it is now the position of [Schroeder] that when the statements were made they were not intended to be fraudulent. That when the statements were made they were made in good faith."

Thus, we conclude that TIW was free to terminate Schroeder's employment at will, and was entitled to summary judgment on the breach of contract claim.

For the foregoing reasons, the judgment of the court of appeals is affirmed.