In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00100-CV


______________________________






 IN THE MATTER OF THE MARRIAGE OF ANGELICA MARIA REYES 

 AND GERARDO REYES AND IN THE INTEREST OF IRIS NOELIA REYES, 

A MINOR CHILD







 


On Appeal from the 311th Judicial District Court


Harris County, Texas


Trial Court No. 01-18604




 


 Before Morriss, C.J., Ross and Cornelius,* JJ.

Opinion by Chief Justice Morriss



_______________________________________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

O P I N I O N



 Gerardo Reyes has filed an appeal from a decree of divorce and an order establishing
paternity. The clerk's record in this case was due on June 5, 2002, and was filed on September 3,
2002. There is no indication that any reporter's record has been requested. When the clerk's record
was filed, therefore, we directed counsel to file his appellate brief by October 3, 2002. Counsel did
not respond. On October 18, 2002, we directed Reyes' counsel to provide this Court with
information showing he was making an effort to pursue his appeal by filing his appellate brief and
warned him that, if he did not do so on or before November 4, 2002, the appeal would be subject to
dismissal for want of prosecution. See Tex. R. App. P. 38.8(a)(1)

 Counsel has not contacted this Court. We find his failure to make any effort to file an
appellate brief in accordance with the directives of this Court constitutes a failure to prosecute his
case. Accordingly, we dismiss his appeal for want of prosecution. Tex. R. App. P. 38.8(a)(1),
42.3(b), (c).

 We dismiss the appeal for want of prosecution.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: November 19, 2002

Date Decided: November 20, 2002


Do Not Publish


All courts must have subject-matter jurisdiction to hear the disputes before it. Tex. Ass'n of
Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993). Subject-matter jurisdiction may be
raised for the first time on appeal and cannot be waived by the parties. Id. at 445. If a trial court
lacked jurisdiction, the appellate court has jurisdiction only to set aside any judgment rendered by
the trial court and to dismiss the cause. Tex. R. App. P. 43.2(e); Juarez v. Tex. Ass'n of Sporting
Officials El Paso Chapter, 172 S.W.3d 274, 278 (Tex. App.--El Paso 2005, no pet.); Dallas County
Appraisal Dist. v. Funds Recovery, Inc., 887 S.W.2d 465, 468 (Tex. App.--Dallas 1994, writ
denied). The claimant bears the burden of alleging facts that affirmatively show the trial court has
subject-matter jurisdiction at all times. Tex. Ass'n of Bus., 852 S.W.2d at 446; El Paso County v.
Navarrete, 194 S.W.3d 677, 683 (Tex. App.--El Paso 2006, pet. denied); Vela v. Waco Indep. Sch.
Dist., 69 S.W.3d 695, 698 (Tex. App.--Waco 2002, pet. withdrawn). Because jurisdiction is a
question of law, we review de novo the trial court's ruling on a plea to the jurisdiction. Houston
Mun. Employees Pension Sys. v. Ferrell, 248 S.W.3d 151, 156 (Tex. 2007); Reed v. Prince, 194
S.W.3d 101, 105 (Tex. App.--Texarkana 2006, pet. denied).

 Texas appellate courts "look to the pleader's intent" and liberally construe the plaintiff's
allegations in favor of jurisdiction unless the face of the petition affirmatively demonstrates a lack
of jurisdiction. Tex. Ass'n of Bus., 852 S.W.2d at 446; Vela, 69 S.W.3d at 698; Smith v. Univ. of Tex.
Sw. Med. Ctr. of Dallas, 101 S.W.3d 185, 188 (Tex. App.--Dallas 2003, no pet.). In other words,
dismissing a cause of action for lack of subject-matter jurisdiction is proper only when it is
impossible for the plaintiff's petition to confer jurisdiction on the trial court. Tex. Dep't of Protective 
& Regulatory Servs. v. Lynn, No. 03-04-00635-CV, 2005 WL 1991809, at *4 (Tex. App.--Austin
Aug. 16, 2005, pet. denied) (mem. op., not designated for publication); Smith, 101 S.W.3d at 188. 

 On the record before us, a lack of jurisdiction affirmatively appears. Before filing suit,
Rankin was required to have exhausted his administrative remedies by filing his administrative
charge of discrimination within 180 days of the alleged discriminatory event. This he failed to do.

Rankin Was Required to Exhaust Administrative Remedies Before Filing Suit

 When the Legislature grants an administrative body the sole authority to make an initial
determination in a dispute, the agency has exclusive jurisdiction to determine the issues involved. 
Ferrell, 248 S.W.3d at 157; Thomas v. Long, 207 S.W.3d 334, 340 (Tex. 2006). The Texas
Commission on Human Rights Act (the Act) established a comprehensive administrative review
system  to  carry  out  the  policies  embodied  in  Title  IV  and  the  ADEA.  Tex.  Lab.  Code
 Ann. §§ 21.001, 21.051 (Vernon 2006); Schroeder v. Tex. Iron Works, Inc., 813 S.W.2d 483, 485
(Tex. 1991); Vela, 69 S.W.3d at 699. One important policy of the ADEA is exhaustion of
administrative remedies before litigation. Schroeder, 813 S.W.2d at 487; Vela, 69 S.W.3d at 699. 
In furtherance of that policy, the Act created the TWC, as a deferral agency to the EEOC, and gave
it the power to "receive, investigate, seek to conciliate, and pass on complaints" alleging age
discrimination violations. Tex. Lab. Code Ann. §§ 21.0015, 21.003, 21.051 (Vernon 2006). 

 Since the Act gives the TWC exclusive authority over age discrimination disputes, a person
claiming employment discrimination must exhaust all administrative remedies before bringing a civil
action in the district court. Ferrell, 248 S.W.3d at 157; Thomas, 207 S.W.3d at 340; Schroeder, 813
S.W.2d at 486; Navarrete, 194 S.W.3d at 682. This affords the TWC the opportunity to efficiently
execute their goal of minimizing discrimination while reducing costly litigation. Czerwinski v. Univ.
of Tex. Health Sci. Ctr. at Houston Sch. of Nursing, 116 S.W.3d 119, 121 (Tex. App.--Houston
[14th Dist.] 2002, pet. denied); Navarrete, 194 S.W.3d at 683. Until the party has satisfied this
exhaustion requirement, the trial court lacks subject-matter jurisdiction. Thomas, 207 S.W.3d at 340.

 An employee claiming to be aggrieved by an unlawful employment practice files a complaint,
commonly referred to as a charge, with either the TWC or EEOC. Tex. Lab. Code Ann. § 21.201
(Vernon 2006). The charge must be filed within 180 days of the alleged discriminatory practice. 
Id. A late-filed charge will be dismissed as untimely. Tex. Lab. Code Ann. § 21.202 (Vernon
2006). Timeliness of the charge "shall be determined by the date on which the complaint is received
by the EEOC." 40 Tex. Admin. Code § 819.71 (2005) (Tex. Workforce Comm'n Civ. Rights Div.);
Specialty Retailers, Inc. v. DeMoranville, 933 S.W.2d 490, 492 (Tex. 1996); Tex. Tech Univ. v.
Finley, 223 S.W.3d 510, 514-15 (Tex. App.--Amarillo 2006, no pet.); Cooper-Day v. RME
Petroleum Co., 121 S.W.3d 78, 83 (Tex. App.--Fort Worth 2003, pet. denied). Filing within the
limitations period is a mandatory prerequisite to filing a civil action alleging violations of the Act. 
Schroeder, 813 S.W.2d at 488.  The Texas Supreme Court has stated that the Act does not provide
an "unconditional private right of action." Id.; Vela, 69 S.W.3d at 700. Therefore, a jurisdictional
bar to a statutory discrimination claim in civil court is created if an employee fails to file a timely
charge and fully pursue administrative remedies with the TWC. Schroeder, 813 S.W.2d at 488;
Vela, 69 S.W.3d at 700; Navarrete, 194 S.W.3d at 682; Czerwinski, 116 S.W.3d at 121-22. 

The Limitations Period Began When Rankin Learned of His Demotion

 Limitations begins when the discriminatory acts are communicated, not when "the
consequences of the acts become most painful."  Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980). 
Thus, the 180-day limitations period for an employment discrimination complaint begins when the
employee is informed of the allegedly discriminatory employment decision, not when that decision
comes to fruition. Specialty-Retailers, Inc., 933 S.W.2d at 493; Cooper-Day, 121 S.W.3d at 83, 85.
The date of the discriminatory act controls, not some later date when the employee discovers the act
is discriminatory. See Merrill v. S. Methodist Univ., 806 F.2d 600, 605 (5th Cir. 1986) (rejecting
theory that statute of limitations should begin to run when employee discovers discriminatory
motive, rather than actual date of act itself); Cruse v. Chicago Park Dist., No. 95 C 2882, 1995 WL
519735, at *2 (N.D. Ill. Aug. 31, 1995) (accrual date for discrimination claim when employee
discovers injury, not when employee discovers injury is actionable). A new charging period does
not begin with a subsequent nondiscriminatory act that causes some additional adverse effect
resulting from the past discrimination. Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 127
S.Ct. 2162, 2164 (2007). For this reason, mere continuity of employment is insufficient to prolong
the life of a cause of action for employment discrimination. 

 Rankin's complaint alleged that he was constructively terminated May 4, 2005, when he
refused to take the demotion. Rankin was demoted March 31, 2005. While Rankin's administrative
charge was filed within 180 days after the constructive termination, his demotion had occurred 195
days before his charge was filed. If age discrimination played a role in his demotion, and the
termination  was  a  mere  consequence  of  his  demotion,  his  charge  is  untimely.  See  Cooper-Day, 121 S.W.3d at 83. In analyzing this issue, we indulge every reasonable inference in favor of
Rankin, assume all evidence favorable to him is true, and resolve any doubts in his favor. See
Reeves v. Houston Lighting & Power Co., 4 S.W.3d 374, 377 (Tex. App.--Houston [1st Dist.] 1999,
pet. denied). 

 Two cases are particularly instructive in analyzing this statutory limitations bar. In the first
case, the United States Supreme Court explained the principle that continuity of employment will
not toll the 180-day time period. See Ricks, 449 U.S. at 258. Ricks was a black Liberian that joined
the university's education department in 1970. Id. at 252. In February 1973, the faculty committee
recommended that Ricks be denied a tenured position. Id. The committee agreed to reconsider its
decision the following year and, on March 13, 1974, reaffirmed the denial of tenure. Id. The
committee offered Ricks a terminal contract which would expire in one year, officially ending the
employment relationship. Id. at 253. Ricks filed a charge with the EEOC April 4, 1975, alleging
discrimination based on national origin in the denial of tenure and termination. Id. at 254. The
United States Supreme Court ruled that Ricks' complaint was untimely and reasoned that, if Ricks
wanted to complain about the denial of tenure, he should have identified the alleged discriminatory
acts that continued until, or occurred at the time of, the actual termination. Id. at 257. Because
Ricks' termination was a delayed, but inevitable, consequence of the denial of tenure, he could not
complain the termination was a separate discriminatory act rather than the point at which the
consequences of the acts became most painful. Id. at 257-59. 

 In the other instructive case, a woman worked in the finance department of a motor vehicle
dealer. See Davis v. Autonation USA Corp., 226 S.W.3d 487, 489 (Tex. App.--Houston [1st Dist.]
2006, no pet.). On November 9, 2001, Davis received a corrective action in her file for her failure
to meet performance standards and was told she could either transfer to the Internet department or
be terminated due to poor performance. Id. Davis transferred and, in January 2002, quit her job
because she was not receiving enough money. Id. In June 2002, Davis filed a charge of race and
sex discrimination occurring between April 1, 2001, and January 2, 2002. Id. at 490. Autonation
argued that Davis did not meet the 180-day requirement because she failed to file the charge within
180 days of her demotion. Id. Davis countered by stating she did not know the transfer was a
demotion because she was unaware she would be receiving less money until receipt of her first pay
check in December 2001. Id. at 491. In rejecting Davis' argument, the court held the demotion date
triggered the 180-day statute of limitations. Id. at 492. 

 Here, Rankin received news of his demotion for failure to meet performance standards 195
days before he filed the charge with the EEOC. Rankin quit or was constructively terminated when
he decided not to take the demotion. Rankin's employment separation was a consequence of his
earlier demotion, rather than a separate discriminatory act. In other words, the self-inflicted
termination was the point at which the consequences of the allegedly discriminatory demotion
became most painful. See Ricks, 449 U.S. at 257-59. Thus, the limitations clock began to run on
the day Rankin learned of his demotion. Since Rankin failed to identify any alleged discriminatory
acts that continued until, or occurred at the time of, the actual constructive termination (May 4,
2005), limitations ran fifteen days before he filed the EEOC charge. See id. at 257; Davis, 226
S.W.3d at 492. (3)

 It was Rankin's burden to demonstrate that the trial court had jurisdiction in his employment
discrimination case. See Bartosh v. Sam Houston State Univ., 259 S.W.3d 317, 321 (Tex.
App.--Texarkana 2008, pet. filed). Rankin failed to meet his burden. Therefore, the trial court did
not have subject-matter jurisdiction over Rankin's employment discrimination suit.

 We vacate the trial court's order and dismiss the case for want of jurisdiction. 


 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 8, 2008

Date Decided: December 10, 2008
1. On October 12, 2005, the Equal Employment Opportunity Commission (EEOC) received
Rankin's charge outlining a claim under the Age Discrimination in Employment Act of 1967
(ADEA). Rankin alleged he was replaced by a person under the age of forty and that a young
manager who also failed to meet quotas was not terminated. In the space provided on the charge
form to list a state agency, Rankin included the Texas Workforce Commission (TWC) Civil Rights
Division and specified that he wanted the "charge filed with both the EEOC and the State or local
agency." The EEOC was unable to conclude that a violation was established. On March 9, 2006,
the EEOC issued a "Dismissal and Notice of Rights," commonly referred to as a right-to-sue letter.
2. Abbott argued, inter alia, that the trial court lacked subject-matter jurisdiction because
Rankin filed his employment discrimination charge more than 180 days after the alleged
discriminatory act. This limitations period is mandated by Section 21.202 of the Texas Labor Code
as essential to exhaustion of administrative remedies with the TWC.
3. We note, for the sake of completeness, that the law does provide some relief for those
employees who make an effort to determine if discrimination played a role in the adverse action. 
Employment discrimination claims are subject to equitable tolling when an employee can show that,
despite diligent efforts on his or her part, the employee was unable to obtain information necessary
to determine the existence of his or her claim. Cruse, 1995 WL 519735, at *2. This is consistent
with the language in Ricks stating, "the limitations periods should not commence to run so soon that
it becomes difficult for a layman  to  invoke  the  protection  of  the  civil  rights  statutes."  Ricks,
 449  U.S.  at  258  n.9; Tex. A & M Univ., Corpus Christi v. Vanzante, 159 S.W.3d 791, 797 (Tex.
App.--Corpus Christi 2005, no pet.). This tolling provision protects an employee who knows he
or she has been injured, but is reasonably unaware that his or her injury was brought about by
discriminatory means. Id. (citing Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir.
1990)). The discovery rule and fraudulent concealment can apply to toll the statute of limitations
until the employee knows, or through reasonable diligence should have known, of the facts giving
rise to a cause of action. Lynn, 2005 WL 1991809, at *6. Rankin failed to suggest such possibilities
in this case.