TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00582-CV





Bastrop County, Texas, Appellant


v.


Denver Samples; One Martin's Meadow, Ltd.; Main Street, Ltd.; James E. Garon; and
James E. Garon & Associates, Inc., Appellees





FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT

NO. 26,567, HONORABLE CHARLOTTE HINDS, JUDGE PRESIDING









NO. 03-08-00648-CV





In re Bastrop County, Texas





ORIGINAL PROCEEDING FROM BASTROP COUNTY





O P I N I O N


 Bastrop County, Texas, appellant and relator in these proceedings, has filed an
interlocutory appeal, see Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008), and petition
for writ of mandamus, see Tex. R. App. P. 52.3, complaining of the trial court's refusal to rule on
the County's plea to the jurisdiction and abatement of the underlying proceeding to allow appellee
and real party in interest Denver Samples to exhaust administrative remedies. We reverse the
trial court's order abating the proceeding and render judgment denying the County's plea to the
jurisdiction. We dismiss the County's petition for writ of mandamus.


 The underlying lawsuit was brought by Samples against the County, One Martin's
Meadow, Ltd., Main Street, Ltd., James Garon, and James E. Garon & Associates, Inc. In that suit,
Samples alleged that in 1960 he bought nineteen acres along State Highway 21. Sometime after
1960, James and Rozelle Martin bought about 145 acres east of Samples's property. Samples gave
the Martins verbal permission to use a 62-foot stretch of Samples's property to gain access from the
Martin property to SH21. The throughway was not paved, but over time, it became "impressed with
tire ruts while the native shrubs and grasses continued to grow between the ruts." In 2002, after
James Martin died, Rozelle Martin sold the property to One Martin's Meadow, which subdivided
the property for a housing development. The deed to One Martin's Meadow did not purport to
include any interest in the throughway across Samples's property. However, One Martin's Meadow,
relying on a survey performed by James Garon and Garon's surveying firm and on a county roadmap
prepared by the County, paved the throughway across Samples's property to SH21. Samples was
never contacted for permission to use his property for highway access. 

 Samples sued One Martin's Meadow and Main Street, which constructed homes in
the subdivision, for trespass to try title. Main Street filed a cross-claim against One Martin's
Meadow, asserting that One Martin's Meadow had represented to Main Street that the subdivision
had access rights across Samples's property to the highway. Samples later dismissed his claims
against Main Street. One Martin's Meadow filed a third-party petition against Garon and his firm,
alleging that they were negligent in their survey of the property and had certified that the property
had access to and from SH21 across the throughway, which One Martin's Meadow believed was
named Martin's Crossing Drive. In March 2008, Samples amended his petition to add the County
as a defendant, alleging that in June 2007, the County, through its commissioners court, created a
roadmap that improperly designated Martin's Crossing Drive as a road in which the County had a
public interest. Samples sought to contest the County's designation of the throughway as a county
road and asked the trial court to set aside the County's designation in the County's roadmap and to
require the County to redraw the map. The County filed a plea to the jurisdiction, asserting that
under chapter 258 of the transportation code, Samples was required to contest the roadmap at the
commissioners-court level before he could sue in the trial court to have the map redrawn. See
Tex. Transp. Code Ann. §§ 258.001-.007 (West Supp. 2008). Following a hearing on the County's
plea, the trial court signed an order abating the proceeding to allow Samples "the opportunity to
pursue the administrative remedies available under Chapter 258." 

 In its interlocutory appeal, the County argues that the trial court should have granted
the County's plea because Samples did not exhaust his administrative remedies before suing the
County. Thus, the County argues, Samples's suit should be dismissed, not abated. In its mandamus
petition, the County argues that the trial court abused its discretion in refusing to rule on the
County's plea to the jurisdiction.

 A county's commissioners court may propose a roadmap showing all roads in which
the county "claims the existence of a public interest." Id. § 258.002(a). A commissioners court
proposing a county roadmap must hold a public meeting, during which a person asserting a private
interest in a road may protest the road's inclusion on the map. Id. § 258.002(b). A person asserting
a private interest may also file a written protest at any time before the public hearing. Id. If a protest
is made or filed, the commissioners court shall appoint a jury to determine whether the public has
an interest in the contested road. Id. The commissioners court is required to publish notice of the
hearing in at least one newspaper of general circulation in the county. Id. § 258.002(c). A person
claiming a private interest in a road in which the county asserts a public interest "may contest the
inclusion of the road in the county road map by filing a suit in a district court in the county in which
the road is located not later than the second anniversary of the date on which the county road map
including the road was adopted." Id. § 258.004(a). "The county has the burden of proving that the
county has continuously maintained . . . the road in question." Id. § 258.004(b). 

 The County argues that because Samples did not appear at the public hearing on the
proposed map or file a written protest before the hearing, he has not exhausted the administrative
remedies available to him and therefore may not sue under section 258.004. We disagree.

 Initially, we note that the transportation code sets out several provisions related to a
county's establishment of and acquisition of private property for public roads. Residents may apply
with their local commissioners court for a new road. Id. § 251.052(a) (West 1999); see also
id. § 251.053 (West 1999) (person without public road to property may apply for neighborhood road;
application must name "persons that would be affected by the establishment of the road"; each
affected property owner must be given notice of proposed road and informed of right to appear and
protest; if neighborhood road is established, property owners must be paid damages). If a
commissioners court decides to order a new road, it must appoint a "jury of view" of local property
owners, and that jury must issue written notice of the time "it will lay out the road or assess damages
incidental to the opening of the road." Id. § 251.054(a), (e) (West 1999). The jury must give notice
to each property owner "through whose real property the road may pass," and the property owner
may present a written statement of the damages he will incur and, if dissatisfied with the jury's
damages decision and the commissioners court's award, appeal the damages determination. Id.
§ 251.054(e), (f), (g); see id. § 251.101 (West 1999) (alternatively, county may exercise its eminent-domain power "in a municipality and with the prior consent of the . . . municipality to condemn and
acquire real property, a right-of-way, or an easement . . . necessary or convenient to any road that
forms or will form a connecting link in the county road system or in a state highway"); see also Tex.
Prop. Code Ann. §§ 21.001-.102 (West 2000 & 2004 & Supp. 2008) (statutes governing eminent
domain in general); David B. Brooks, 36 Texas Practice 2d County & Special District Law, Roads
& Bridges § 40.25 (2002) ("The county may proceed under its general eminent domain statutory
authority or under the Transportation Code, which includes the use of a jury of view. . . . However,
as it now stands, with the availability of the general condemnation statutes, there is no reason for a
county to open a road under the old jury of view method." (footnote omitted)). (1) 

 Thus, before a county may either acquire a public interest in a private road or
establish a new county road or access road across private land, the affected land owner must be given
personal notice of the proposed acquisition and the opportunity to protest and/or present evidence
of the owner's damages. See Tex. Transp. Code Ann. §§ 251.053, .054, .101, 281.006 (West 1999). 
More importantly, a county may not take a private owner's land for a public road without paying the
landowner for the privilege. See id. §§ 251.053(e), .054(e), (f), (g), .101, 281.002; see also
Tex. Prop. Code Ann. §§ 21.014-.016, .018 (West 2004) (special commissioners must be appointed
to assess damages to property owner; commissioners must hold hearing, and each party "is entitled
to written notice" of hearing; party to condemnation proceeding may appeal special commissioners'
findings), 21.041 (West 2000) (special commissioners must hear evidence related to value of land
being condemned and injury to landowner), 21.042 (West Supp. 2008) (special commissioners must
assess damages suffered by landowner).

 The County argues that Samples, by failing to protest the roadmap at or before the
hearing on the roadmap, waived any rights he may have to complain of what amounts to a taking of
his land for a public road. Specifically, the County contends that section 258.002(b), which states
that a person asserting a private interest in a road claimed to be public "may" file a written protest
or appear at the roadmap hearing, should be read as requiring the landowner to protest at or before
the hearing before he may sue under section 258.004. As support, the County points to other statutes
in which "may" has been interpreted as setting out a mandatory precondition to suit. However,
those statutory frameworks are very different than the one at issue here. 

 In Schroeder v. Texas Iron Works, Inc., the supreme court concluded that by
providing that an aggrieved person "may file" a complaint with the Texas Commission on Human
Rights, the Commission on Human Rights Act meant that the person must have exhausted all
available administrative remedies before filing suit. 813 S.W.2d 483, 487-88 (Tex. 1991). It
reached this conclusion after considering that the Act: was intended to advance the policies set out
in federal anti-discrimination statutes, which themselves required "exhaustion of administrative
remedies prior to litigation"; established "a comprehensive administrative review system"; and used
the date that a complaint was filed with the commission to determine the deadline for filing suit in
a trial court. See id. at 485-87. In Gregg County v. Farrar, we noted that the Texas Whistleblower
Act explicitly provided that an aggrieved person must "exhaust any applicable grievance or appeal
procedures" before filing suit, regardless of language in an employee manual that a grievance
committee decision "may be appealed." 933 S.W.2d 769, 774-76 (Tex. App.--Austin 1996,
writ denied). (2) Similarly, the education code and the local government code's provisions related to
zoning decisions, although they use "may" in discussing certain administrative procedures or the
filing of an appeal, both require a complainant to first exhaust available administrative remedies
before filing suit. See Tex. Educ. Code Ann. § 7.057, 21.209, .301, .307 (West 2006) (provisions
related to appeals available at various levels generally say that aggrieved person "may appeal" to
next level in process); Tex. Loc. Gov't Code Ann. §§ 211.010(a), .011(a) (West 2008)
(person aggrieved by zoning decision may appeal to board of adjustment, and, after decision by
board, "may" seek judicial review); Jones v. Clarksville Indep. Sch. Dist., 46 S.W.3d 467, 470-71
(Tex. App.--Texarkana 2001, no pet.) (interpreting "may" in section 7.057 of education code to
mean that "aggrieved person may appeal, and if an appeal is taken, it must be to the commissioner
if the matter is one within the scope of the agency's review powers"). 

 The statutes to which the County cites differ in significant ways from chapter 258 of
the transportation code. The other statutory provisions set out fairly comprehensive schemes for
filing and pursuing administrative complaints through a well defined process. More importantly,
those statutes address complaints filed by an individual in response to a specific adverse action, and
the time in which a complainant may pursue administrative remedies generally begins to run
when he learns he has a grievance. See Tex. Gov't Code Ann. §§ 554.002-.006 (West 2004);
Tex. Lab. Code Ann. §§ 21.201-.262 (West 2006); Tex. Loc. Gov't Code Ann. §§ 211.010(a),
.011(a), (b); Tex. Educ. Code Ann. § 7.057, 21.209, .301, .307. But see Tex. Educ. Code Ann.
§ 7.057 (statute does not specify time to file appeal); Tex. Loc. Gov't Code Ann. § 211.010(b)
(appeal to board of adjustment "must be filed within a reasonable time"); Westheimer Indep. Sch.
Dist. v. Brockette, 567 S.W.2d 780, 789 (Tex. 1978) ("Texas law is firmly established that, when the
statute fails to prescribe such a time limit, an appeal must be taken within a reasonable time.").

 For instance, under the whistleblower act, an individual may file a complaint alleging
governmental retaliation for a good-faith report of a violation of law within ninety days after the
retaliation occurred or was discovered through reasonable diligence, Tex. Gov't Code Ann.
§ 554.006, and under the commission on human rights act, an individual may file a complaint
alleging illegal employment practices within 180 days of the alleged illegal practice, Tex. Lab. Code
Ann. §§ 21.201, .202. Under the local government code, municipalities must both post notice in the
local newspaper and send notice of a proposed zoning change to each property owner who might be
affected, and a person aggrieved of a board decision may then appeal through the administrative
process. Tex. Loc. Gov't Code Ann. §§ 211.007, .010, .011 (West 2008).

 Chapter 258 of the transportation code, on the other hand, does not have provisions
that are likely to ensure that an individual will learn of an alleged public interest in a road in time
to register a protest. It does not require notice to be sent to property owners across whose land a
public road is alleged to run, nor does it require all property owners in the area to receive individual
notice. Instead, it requires only that notice of a hearing on a proposed map be run in the local
newspapers in advance of the hearing. Tex. Transp. Code Ann. § 258.002(c). The map itself is not
included in the notice, and instead the map is made available for study at a public location. Id.
§ 258.002(c), (d).

 Samples was not served with notice of the County's intent to take a public interest
in his private throughway, as required by the various condemnation statutes. See id. §§ 251.053,
.054, .101, 281.006. He was not given individual notice that the throughway on his property was
included on the County's roadmap; notice of the roadmap hearing was provided to the public through
a public notice in the local newspapers but did not give any specifics about the roads included on the
map. Samples had no reason to know he should be looking for the notice of the hearing, seeking out
the map to see whether a road across his property was indicated, and then filing a written protest or
appearing at the hearing in person. Nothing informed Samples that he had any duty to participate
in the administrative process until he learned about the inclusion of Martin's Crossing Drive on the
roadmap well after the process was complete. Holding that Samples and other property owners who
have not been put on notice of a proposed governmental taking of their property have a duty to read
all of the public notices posted in the classified sections of the local papers, search out and study
proposed roadmaps, and then protest at or before the hearings on the proposed maps would do away
with the due-process protections provided by condemnation statutes and place an unrealistic and
unfair burden on the property owners. Although neither party discusses the County's failure to
comply with any of the relevant takings statutes, if we were to agree with the County's argument,
the County would essentially be allowed to take Samples's private road without satisfying the
statutory requirements for a taking, and chapter 258's roadmap provisions would trump the
constitutionally mandated procedures for a governmental taking. See Morgan v. Oliver, 82 S.W.
1028, 1030 (Tex. 1904) ("At common law every proprietor holds his property subject to the right of
the sovereign to take it for public use. That right, under the Constitution of this state, is subject to
the condition that compensation for the property and for all damages incident to its taking must be
assessed, and, except in case of the state itself, must be paid for or secured.") 

 We conclude that, unlike the comprehensive statutory frameworks cited by the
County, the permissive language in chapter 258 of the transportation code is indeed permissive. (3) A
property owner may file a protest at or before the hearing on a proposed map, which results in a jury
considering the matter and making a decision that is binding on the commissioners court. See
Tex. Transp. Code Ann. § 258.002(b). However, in the section titled, "Contest," the code provides
that a property owner has two years after the adoption of a map to file suit to amend the map, making
no reference to the protest option provided in section 258.002. See id. § 258.004(a). 

 We conclude that section 258.004 allows Samples to pursue his suit, which was
timely filed within two years of the County's adoption of the roadmap, without first having filed a
protest pursuant to section 258.002. We therefore reverse the trial court's order abating the
proceeding and render judgment denying the County's plea to the jurisdiction. We dismiss the
County's petition for writ of mandamus. 


 __________________________________________

 David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Reversed and Rendered

Filed: March 20, 2009
1. A county of fewer than 50,000 people "may acquire a public interest in a private road only
by: (1) purchase; (2) condemnation; (3) dedication; or (4) . . . adverse possession." Tex. Transp.
Code Ann. § 281.002 (West 1999). A commissioners court in such a county "may not assert a public
interest in a private road" unless it provides written notice to the road's owner in person or by
registered mail. Id. § 281.006 (West 1999). If such a county asserts a public interest in a private
road, a person asserting an interest in that road may sue in district court within two years after (1) a
county resolution declaring a public interest in the road or (2) the property owner is given notice of
the county's intention, whichever is later. Id. § 281.007 (West 1999).
2. The current version of the whistleblower act provides that an employee "must initiate
action under the grievance or appeal procedures of the employing state or local governmental entity
. . . before suing under this chapter." Tex. Gov't Code Ann. § 554.006 (West 2004).
3. Our conclusion is supported by the bill analysis of H.B. 1117, which was enacted in 2003
as chapter 258 of the transportation code. See House Transp. Comm., Bill Analysis, Tex. H.B. 1117,
78th Leg., R.S. (2003). In that analysis, the committee noted that before chapter 258's enactment,
there was no statute of limitations on when a landowner could challenge the public or private status
of a road. Id. H.B. 1117 was intended to aid counties, which otherwise "will most likely lose in
court" in the future, when they will likely be "unable to provide 'live bodies' with firsthand
knowledge" of a road's genesis, resulting in counties losing the right to maintain what they consider
to be public roads, "endanger[ing] the rights of those interior landowners who use the road[s] to
access their propert[ies]." Id. Because it is difficult and prohibitively expensive for counties to
determine ownership of all properties that adjoin all county roads, H.B. 1117 was intended to allow
a county to adopt a proposed roadmap, placing notice of a hearing on the map in local newspapers. 
Id. "Landowners could protest in a public hearing or by mail. . . . After two years, if the landowner
does not protest, the road becomes the responsibility of the county. If, after that two year period, the
landowner decides to protest, the burden is on the landowner, not the county, to prove their case." 
Id. The committee stated that section 258.004


[a]uthorizes a person asserting a private right, title, or interest in a road in which a
public interest is asserted under this chapter to contest the inclusion of the road in the
County road map by filing a suit in a district court in the county in which the road is
located not later than the second anniversary of the date on which the county road
map including the road was adopted.

Id. The analysis does not suggest that a landowner must protest at or before the hearing in order to
avail himself of the contest provision in section 258.004 and, indeed, states that a landowner has
two years from the date the map is adopted to file suit protesting the inclusion of a road. See id.