

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00058-CV

_____

MICHAEL PRUITT, Appellant

V.

INTERNATIONAL ASSOCIATION OF
FIRE FIGHTERS, ET AL., Appellees

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 2010-2546-B

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

Michael Pruitt was the first African-American Fire Chief for the City of Longview, Texas. After he was terminated from this position, he filed suit against labor union International Association of Fire Fighters (International), local affiliate Longview Professional Firefighters Association (Local), and Local's officers and directors Wayne Oldham, Steve Oram, Steve Green, Adam Dreary, Tony Marshall, and Craig Barton (Officers). His complaint alleged causes of action for "Intentionaly [sic] Aiding or Abetting Discrimination," intentional infliction of emotional distress (IIED), breach of fiduciary duty, and tortious interference with employment relations. Pruitt's claims were dismissed for lack of subject-matter jurisdiction. The trial court ruled that: (1) the aiding or abetting claim was a statutory racial discrimination charge as described in Chapter 21[1] of the Texas Labor Code; (2) Pruitt failed to exhaust administrative remedies in neglecting to file a complaint with the Texas Workforce Commission; and (3) Pruitt's common-law claims were pre-empted by Chapter 21. On appeal from the dismissal, Pruitt argues that the trial court erred in failing to afford him an opportunity to replead jurisdictional facts prior to dismissal and that common-law claims were not pre-empted by Chapter 21. We affirm the trial court's decision.

---

[1]Courts have referred to Chapter 21 of the Labor Code as the Texas Commission on Human Rights Act (TCHRA or CHRA); however, the Commission on Human Rights has been replaced with the Texas Workforce Commission (TWC) civil rights division. *See* TEX. LAB. CODE ANN. § 21.0015 (West 2006). We will use the reference Chapter 21 for clarity.

2

## I.     Standard of Review

A party may challenge the absence of subject-matter jurisdiction through a plea to the jurisdiction—a dilatory plea used to defeat the alleged claims without regard to whether they have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). "The purpose of a dilatory plea is not to force [a] plaintiff[] to preview [its] case on the merits but to establish a reason why the merits of the plaintiff[’s] claims should never be reached." *Id.*

We review the trial court's grants of the pleas to the jurisdiction to determine whether facts have been alleged that affirmatively demonstrate jurisdiction in the trial court. *City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a plea to the jurisdiction challenges the pleadings, we construe the pleading liberally in favor of the plaintiff in determining this issue. *Miranda*, 133 S.W.3d at 226. The burden of alleging such facts falls to the plaintiff. *Id.*

Also, "when a statute requires the exhaustion of administrative remedies before a plaintiff may file suit, the plaintiff also bears the burden to show he has met the prerequisite to suit." *Dworschak v. Transocean Offshore Deepwater Drilling, Inc.*, 352 S.W.3d 191, 200 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Permian Basin Cmty. Ctrs. for Mental Health & Mental Retardation v. Johns*, 951 S.W.2d 497, 502 (Tex. App.—El Paso 1997, no writ); *Rodriguez v. Am. Gen. Fire & Cas. Co.*, 788 S.W.2d 583, 585 (Tex. App.—El Paso 1990, writ denied)). Thus, where the plea to the jurisdiction challenges the existence of jurisdictional facts, the trial

3

court reviews the evidence "to determine if a fact issue exists" with regard to jurisdiction. *Miranda*, 133 S.W.3d 227 (citing *Land v. Dollar*, 330 U.S. 731, 735 & n.4 (1947), *overruled by implication on other grounds by Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949) ("observing that as a general rule, district courts have authority to inquire 'into the facts as they exist' 'by affidavits or otherwise' as well as the pleadings when determining whether the court has subject matter jurisdiction")); *see Lopez*, 259 S.W.3d at 150. If a fact question regarding jurisdiction arises, the plea to the jurisdiction should not have been granted. *Lopez*, 259 S.W.3d at 150; *Miranda*, 133 S.W.3d 227–28. "If the pleadings or evidence affirmatively negate a jurisdictional fact, however, a court may grant a plea to the jurisdiction without allowing the plaintiff to amend." *Lopez*, 259 S.W.3d at 150. "These are questions of law that we review de novo." *Id.*

Here, the pleas to the jurisdiction, filed in conjunction with special exceptions, challenged the absence of allegations in the petition and stated that Pruitt failed to file a claim with the Texas Workforce Commission (TWC). Thus, they are challenges to the pleadings, as well as challenges to the existence of jurisdictional facts.

## II.    Factual Background

According to Pruitt's petition, "[a]lmost immediately after assuming the position of Fire Chief, and undertaking the duties attendant thereto, Chief Pruitt was singled out, ostracized and undermined by the officers and members of Local." He believed "that he was so treated because

4

he is of African American descent, a first for the position of Fire Chief." Pruitt surmised that "under-management in the City of Longview Fire Department" Chiefs Kenny Southwell and Grover Oldman sought his position. He alleged that Local "started a campaign within the management structure of the City of Longview, Texas, to undermine" him.

Pruitt recited that Southwell and Oldham "initiated a public campaign targeted to undermine the public perception of Chief Pruitt's work ethics and initiatives, as well as his competence before the management of the City of Longview, the rank and file of Local #4331 and the citizens of Longview, Texas." "[U]nder the direction of Southwell and Oldham . . . Local #4331 sent out a questionnaire to the membership of the organization, soliciting comment on the Chief's job performance." Pruitt maintained that the "questionnaire was ill conceived and targeted to elicit negative comments about the new African American Chief and to bring about his ouster." As a result of the survey "suggesting lack of trust, anger, and micromanagement," Pruitt was placed on a probationary period. He was subsequently terminated from employment on November 12, 2009.[2] Following Pruitt's termination, Southwell and Oldham were both appointed to the position of Interim Fire Chief.

---

[2]Immediately upon termination, Pruitt initiated an administrative action against the City of Longview, Texas, with the United States Department of Labor, Equal Employment Opportunity Commission (EEOC) alleging racial discrimination prohibited by Title VII of the Civil Rights Act of 1964. The City of Longview resolved the EEOC claims through settlement. As a part of the settlement with the City of Longview in the EEOC case, Pruitt released

the City, including, . . . all employees . . . from and against any and all disputes, claims, demands, causes of action, debts, liens, liabilities, obligation, judgment or suits in equity of whatsoever nature, arising during or out of Pruitt's employment with the City and the termination of such employment with respect to any matter or matters that were set forth or that could have been set forth in the

5

**III.  Exhaustion of Administrative Remedies Prior to Suit**

The first cause of action in Pruitt's petition is based upon an alleged violation of Section 21.056 of the Texas Labor Code, which states, "An employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union,[3] or employment agency aids, abets, incites, or coerces a person to engage in a discriminatory practice."  TEX. LAB. CODE ANN. § 21.056 (West 2006).

**A.  The Labor Code's Statutory Scheme**

The Texas Labor Code includes specific procedures for pursuing Section 21.056 claims. "A person claiming to be aggrieved by an unlawful employment practice or the person's agent may file a complaint with the" TWC Civil Rights Division.  TEX. LAB. CODE ANN. §§ 21.0015, 21.201 (West 2006).  The complaint "must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred."  TEX. LAB. CODE ANN. § 21.202 (West 2006).  Once the complaint is filed, the executive director of the commission or a designee of the executive director investigates the complaint and determines "if there is reasonable cause to believe that the respondent engaged in an unlawful employment practice."  TEX. LAB. CODE ANN. § 21.204(a) (West 2006).  The complaint is dismissed if such reasonable cause does not exist.  TEX. LAB.

Charges for all claims for lost wages and benefits, mental pain or anguish, or any such claim or claims for damages under Title VII.

He concedes that this settlement released suit against the Officers in their individual capacities.  Consequently, we will not disturb the trial court's dismissal of claims against the Officers in their individual capacities.

[3]By Pruitt's admission, International is a labor union, and Local is an affiliate labor union.  Local acts through its Officers.

6

CODE ANN. § 21.205(a) (West 2006). If reasonable cause exists, the evidence in the record is reviewed "with a panel of three commissioners." TEX. LAB. CODE ANN. § 21.206(a) (West 2006). If "at least two of the three commissioners determine that there is reasonable cause to believe the respondent engaged in an unlawful employment practice, the executive director shall: (1) issue a written determination incorporating the executive director's finding that the evidence supports the complaint; and (2) serve a copy of the determination on the complainant, the respondent, and other agencies as required by law." TEX. LAB. CODE ANN. § 21.206(b) (West 2006). The commission can file a petition in district court for a temporary injunction if necessary. TEX. LAB. CODE ANN. §§ 21.210, 21.251 (West 2006).

If the complaint is not dismissed and not resolved "before the 181st day after the date the complaint was filed, the commission shall inform the complainant of the dismissal or failure to resolve the complaint in writing by certified mail." TEX. LAB. CODE ANN. § 21.208 (West 2006). The complainant who receives this notice is entitled to send a written request to the commission to send a "written notice of the complainant's right to file a civil action." TEX. LAB. CODE ANN. § 21.252(a), (b) (West 2006). "Failure to issue the notice . . . does not affect the complainant's right . . . to bring a civil action against the respondent." TEX. LAB. CODE ANN. § 21.252(d) (West 2006). "Within 60 days after the date a notice of the right to file a civil action is received, the complainant may bring a civil action against the respondent." TEX. LAB. CODE ANN. § 21.254

7

(West 2006). This is the proper avenue to the district courts with respect to claims that fall within the scope of Chapter 21.

The Legislature developed this elaborate procedure to resolve employment discrimination claims. We have stated that "[a] plaintiff must comply with administrative prerequisites to sustain an employment discrimination cause of action. This is mandatory and jurisdictional." *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 321 (Tex. App.—Texarkana 2008, pet. denied).

### B. Filing a Complaint with the Texas Workforce Commission Was a Statutory Prerequisite to Suit for the Aiding or Abetting Discrimination Claim

The Texas Supreme Court has held that exhaustion of Chapter 21's administrative remedies is a prerequisite to bringing a civil action for discrimination claims for three reasons. *Schroeder v. Tex. Iron Works*, *Inc.*, 813 S.W.2d 483, 488 (Tex. 1991), *overruled in part on other grounds by In re United Servs. Auto. Ass'n*, 307 S.W.3d 299 (Tex. 2010). First, the various provisions of Chapter 21 strongly indicate a requirement of mandatory exhaustion of administrative remedies. *Schroeder*, 813 S.W.2d at 487. For example, the Section entitled "Civil Action by Complainant" reads, "[w]ithin 60 days after the date a notice of the right to file a civil action is received, the *complainant* may bring a civil action *against the respondent*." TEX. LAB. CODE ANN. § 21.254 (emphasis added). Moreover, "[*a*] *civil action* may not be brought under this subchapter later than the second anniversary of the *date the complaint* relating to the action is filed." TEX. LAB. CODE ANN. § 21.256 (West 2006) (emphasis added). Additionally, a

8

judicial proceeding under Chapter 21 "*is by trial de novo*." TEX. LAB. CODE ANN. § 21.262 (West 2006) (emphasis added).

Next, although the language of Chapter 21 states that a person "may" file an administrative complaint, the legislation was designed to "encourages compliance through voluntary resolution, conference, conciliation and persuasion -- informal processes other than litigation." *Id.* at 486–87. Thus, the Texas Supreme Court "do[es] not believe the Legislature's comprehensive remedial scheme allows aggrieved employees to proceed on dual tracks -- one statutory and one common-law, with inconsistent procedures, standards, elements, defenses, and remedies," since interpreting the statute to allow for simultaneous litigation would frustrate its purpose. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 799 (Tex. 2010); *see Schroeder*, 813 S.W.2d 486–87.

Third, because the general purpose of Chapter 21 was to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments, and "the United States Supreme Court ha[d] made it clear that Title VII include[d]" the requirement to "first fil[ing] a charge with the EEOC" prior to bringing a civil action, the Texas statute should also be interpreted in the same manner. *Schroeder*, 813 S.W.2d at 485–87 (citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47 (1974); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973); *Love v. Pullman Co.*, 404 U.S. 522, 523 (1972)); *see* TEX. LAB. CODE ANN. § 21.001(1) (West 2006). Thus, "failure to file a complaint and to pursue . . . administrative

remedies with the Commission creates a jurisdictional bar to" discrimination claims. *Schroeder*, 813 S.W.2d at 488; *Waffle House*, 313 S.W.3d at 804–05.

This precedent from the Texas Supreme Court requires the exhaustion of administrative remedies with the TWC prior to filing suit for intentionally aiding or abetting discrimination.

## C. Pruitt Abandoned the Racial Discrimination Claim

Pruitt argues that even if his pleading is defective in failing to allege that he had exhausted his administrative remedy by filing a complaint for discrimination with the Texas Workforce Commission, he should be allowed to replead because there is no evidence of this failure. We find that Pruitt abandoned his claim for racial discrimination, and therefore do not reach that issue.

Pruitt's pleadings allege four causes of action: (1) intentionally aiding or abetting discrimination; (2) intentional infliction of emotional distress; (3) breach of fiduciary duty; and (4) tortious interference with employment relations. We will affirm the trial court's dismissal order on any legal theory supported by the record. *Seaman v. Seaman*, 425 S.W.2d 339, 341 (Tex. 1968).

At the hearing on the motion to dismiss for want of jurisdiction, the defendants argued that Pruitt had failed to comply with the filing requirements of the Texas Labor Code, and therefore the court had no jurisdiction to consider the racial discrimination claim. In response, Pruitt's attorneys repeatedly explained to the trial court that Pruitt was not attempting to assert a claim for

racial discrimination, but instead was merely citing facts which raised common-law causes of action. Some examples of these statements are:

> But, Your Honor, nowhere in our Petition do we plead a cause of action against any defendant for an unlawful employment practice of discrimination against Chief Pruitt. What I plead are common law causes of action, breach of fiduciary duty.
>
> . . . .
>
> [W]e are not suing for employment discrimination. We have three common law causes of actions that we're suing for.
>
> . . . .
>
> And, Your Honor, up under No. IV [the pleading which alleges Intentionally Aiding or Abetting Discrimination] I will abandon the way that I've -- I've laid out the intentionally aiding or abetting of discrimination . . . . [T]hat's an element of proof that will later arise.
>
> . . . .
>
> Here, I am bringing common law torts, not employment discrimination.
>
> . . . .
>
> If I can -- if I need to cure, by removing my Texas Labor Code claim of 21.056, then I'll do that.

Similar statements were made to the trial court several more times. At some point, Pruitt's counsel stated that their pleading referring to aiding and abetting discrimination was not an independent cause of action.

> [I]t's not our intention to move forward with any cause of action against any defendant in this case for aiding and abetting discrimination, but rather our intention is to go forward on the three causes of action that we have remaining

11

there. And the fact that there was indeed aiding and abetting, those facts are facts. Those facts can certainly be used in other contexts to support other causes of action that would arise at common law.

Finally, the trial judge questioned counsel to assure that he understood counsel's remarks:

> THE COURT: . . . . [M]y understanding now is you're not trying to pursue under the Labor Code.
>
> [Counsel]: That's correct.

All of these statements made in open court while the judge was considering the plea to the jurisdiction motion confirm that if Pruitt ever intended by his pleading to present a racial discrimination cause of action, he renounced and abandoned it. *Sosa v. Central Power & Light Co.*, 901 S.W.2d 562, 567 (Tex. App.—San Antonio), *rev'd on other grounds*, 909 S.W.2d 893 (Tex. 1995) (formal amendment of pleadings not required to show abandonment). The argument was repeatedly made that any allegation of racial discrimination was included merely because the facts of that allegation supported Pruitt's common-law tort actions. The racial discrimination claim itself was therefore not an issue for the trial court and is not an issue before this Court.

## IV. Chapter 21 was Pruitt's Exclusive Remedy

Next, Pruitt argues that the trial court erred in dismissing his claims of IIED, breach of fiduciary duty, and tortious interference with employment relationship. As an alternative to dismissal, Pruitt believes that the trial court should have afforded him the opportunity to amend the complaint by removing references to the alleged discrimination.

### A. The Test for Pre-emption/Exclusive Remedy

12

In *Waffle House*, Williams filed a complaint with the TWC for sexual harassment against her co-worker and employer, and was issued a right to sue letter. 313 S.W.3d at 800. She sued: (1) her co-worker and Waffle House both for sexual harassment under Chapter 21; (2) the co-worker for common-law battery; and (3) Waffle House for common-law negligent supervision and retention. *Id.* at 800. Waffle House argued that Williams' negligent supervision and retention claim should fail as a matter of law because Chapter 21 was the exclusive remedy for workplace sexual harassment. *Id.* at 801–02. The Texas Supreme Court agreed. *Id.* at 802.

While it first recognized that "the legislative creation of a statutory remedy is not presumed to displace common-law remedies" and that "abrogation of common-law claims is disfavored," the court found that Williams' Chapter 21 claim abrogated her common-law claim because there existed "'a clear repugnance' between the two causes of action." *Id.* at 802 (quoting *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000)).

Chapter 21 contains certain caps on damages. *Id.* at 807. Noting this, and affirming the theory that the Legislature did not allow "aggrieved employees to proceed on dual tracks -- one statutory and one common-law," *Waffle House* reasoned "[w]here the gravamen of a plaintiff's case is sexual discrimination that lies at the heart of [Chapter 21]," allowing negligence damages for a Chapter 21 violation would "collide with the elaborately crafted statutory scheme." *Id.* at 799, 804. It explained:

> [P]ermitting a common-law claim for negligent supervision and retention would allow plaintiffs to pick and choose among "irreconcilable and inconsistent

13

regimes," one specific and one more general, the result being that "employees would have little incentive to submit to the administrative process the Legislature considered necessary to help remedy discrimination in the workplace. Such a result would frustrate clear legislative intent.

*Id.* at 808 (footnotes omitted). *Waffle House* proposed that if the statutory and common-law causes of action are based on the same course of conduct, common-law recovery would "undermine the limitations placed on the legislative remedy directed at the same conduct. *Id.* at 808; *see Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 441 (Tex. 2004) (common-law claim for intentional infliction of emotional distress not available to employee complaining of sexual harassment in employment because gravamen of complaint was sexual harassment).

In *City of Waco v. Lopez*, Lopez filed suit under the Whistleblower Act alleging retaliatory discharge for reporting age and race discrimination. 259 S.W.3d 147, 149 (Tex. 2008). Although Lopez did not invoke Chapter 21 in his pleadings, the court decided that his claims fell within Chapter 21's ambit. *Id.* The court wrote "the touchstone is not availment, but availability of [Chapter 21] remedies." *Id*. at 151. Because Lopez's claims could have been raised under Chapter 21, the court found that a plea to the jurisdiction should have been granted. *Id.* at 156.

Thus, in Pruitt's case, we must decide whether the gravamen of his complaint is racial discrimination and whether his common-law causes of action are based on the same course of conduct giving rise to his statutory discrimination claim. The gravamen is "[t]he substantial point or essence of a claim, grievance, or complaint." BLACK'S LAW DICTIONARY 770 (9th ed. 2009). To do this, we will examine whether there are additional facts, unrelated to the statutory

14

discrimination claim, which would independently support Pruitt's tort claims. *See Waffle House*, 313 S.W.3d at 808. If complained-of acts constitute a statutory violation of Chapter 21, they cannot also serve as the basis of an independent tort claim. *Id.* at 813. This is because Chapter 21 is pre-emptive when the actions forming the complained-of torts are entwined with the complained-of discrimination. *See id.* at 799.

## B.  Pruitt Cannot Avoid Chapter 21's Statutory Scheme

Here, Pruitt does not argue with appellees' position that IIED claims are pre-empted if based upon the same facts that give rise to the Chapter 21 violation.[4] Rather, Pruitt claims that his IIED claim was not based upon racial discrimination alone, but upon breach of fiduciary duty and interference with a contractual relationship created by a "public campaign targeted to undermine the public perception of Pruitt's work ethics and initiatives and competence." Pruitt argues that the questionnaire which was sent was the cause of emotional distress. In essence, Pruitt wishes to remove discrimination from the fact scenario.

Pruitt's petition stated he was "singled out, ostracized and undermined" because he was African-American. While the alleged "sinister and ill conceived" campaign was targeted to undermine the public perception of Pruitt's "work ethics and initiatives," which Priutt argues

---

[4]"[A] plaintiff's failure to establish his or her claim . . . does not mean that the plaintiff has a claim for intentional infliction of emotional distress. If the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, a statutory claim." *Hoffmann–La Roche Inc.*, 144 S.W.3d at 448. "[I]ntentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005).

15

could form an independent tort of breach of fiduciary duty and interference with employment relations, the petition stated that the questionnaire was targeted to "elicit negative comments about the new African American Chief and to bring about his ouster." After listing the facts, the complaint explained that "[b]ased on all of these actions," Pruitt was terminated and immediately filed a complaint with the EEOC. Under each cause of action, Pruitt repled the factual portions of the petition. He complained that the Officers were engaging in "behaviors of discriminatory practices." There are no additional facts recited under the common-law causes of action that would give rise to independent tort claims. From the face of this petition, it appears that racial discrimination was the gravamen of Pruitt's complaint. As previously discussed, even though Pruitt effectively abandoned the claims for racial discrimination, he continued to assert that the "facts" giving rise to the racial discrimination claim were an integral part of and supported the common-law claims.

Counsel for Pruitt also stated that he could remove the Chapter 21 claim, but that "it will be a factor. We can't create facts, we report them. They will be factors under the common law causes of action that I've pled." He further argued that the petition recited facts "that state that the [defendants have] done things that would be violative of that statute, but the gist of the claim today is that of breach of fiduciary duty, intentional infliction and the tortious interference." Counsel tried to explain the inclusion of the statutory cause of action:

> [MR. HAMILTON]: The only thing that even triggers a discussion about the administrative agency is because we've used the words "aiding, abetting

16

discrimination" and we cite to Labor Code, the section. While that's not an independent cause of action or it's not intended to be an independent cause of action at this point, the fact that those things occurred would certainly be supported as evidence of some of the other things that we have alleged; in particular, the breach of fiduciary duty.

These comments demonstrate that Pruitt intended to use facts relating to racial discrimination to support his common-law causes of action.

Our reading of the petition, along with counsel's argument to the court, lead us to conclude that the facts giving rise to Pruitt's common-law causes of action were inextricably interwined with the facts giving rise to complaints that could have been resolved through Chapter 21's administrative procedures. We find that a racial discrimination complaint was the gravamen of Pruitt's action and that allowing his complaint to proceed without meeting the requirement of exhaustion of remedies would "collide with the elaborately crafted statutory scheme." *Waffle House*, 313 S.W.3d at 804. Based on Texas Supreme Court precedent, we conclude Pruitt's common-law claims were pre-empted by Chapter 21.

Pruitt also asserts that a plea to the jurisdiction is not the proper procedural vehicle to address this issue. This issue seems to be answered by the Texas Supreme Court when, in a similar circumstance, it approved the use of a plea to the jurisdiction in the *Lopez* case. *Lopez*, 259 S.W.3d at 156.

Moreover, we find Pruitt cannot amend the petition to escape the statutory requirements. Pruitt's attorneys explained to the trial judge that the allegations regarding racial discrimination

17

are "facts . . . but that's an element of proof . . . " and "the fact that those things occurred [alleged acts of racial discrimination] would certainly be supported as evidence of some of the other things we have alleged; in particular, the breach of fiduciary duty."  These allegedly racially discriminatory "facts" are relied on to support the common-law claims.  But these facts of racial discrimination, the gravamen of the complaint, affirmatively negate jurisdiction as they "fall squarely" under the Chapter 21 racial discrimination statutory cause of action which provides the exclusive remedy for such allegations.  *Id*.  Since Pruitt failed to meet his initial burden to plead facts showing the court that it had jurisdiction and further explained in open court that he would necessarily rely on acts of racial discrimination to support his common-law claims, Pruitt is unable to show, even on repleading, that Chapter 21's statutory jurisdictional prerequisites had been met.  Pruitt abandoned his statutory action for racial discrimination.  His pleadings and statements in open court confirm that the common-law actions are based on the same conduct as the racial discrimination claim.  Consequently, Pruitt has failed to seek the exclusive remedy and cannot now pursue such statutory remedy.  In this instance, the trial court was without subject-matter jurisdiction to decide Pruitt's claims.  *Id.*  Thus, the trial court did not err in dismissing Pruitt's common-law claims.  We overrule Pruitt's points of error relating to the common-law claims.

18

## V.    Conclusion

We affirm the judgment of the trial court.


                                          Jack Carter
                                          Justice

Date Submitted:     February 15, 2012
Date Decided:       March 23, 2012