In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00021-CV
_____


ELIZABETH WOODS AND KAREN PRATER, Appellants

V.

COMMUNITIES IN SCHOOL SOUTHEAST TEXAS AND KAREN
NEWTON, Appellees

On Appeal from the 136th District Court
Jefferson County, Texas
Trial Cause No. D-194,118

MEMORANDUM OPINION

Elizabeth Woods (Woods) and Karen Prater (Prater) (collectively "appellants" or "plaintiffs") appeal the trial court's order granting a plea to the jurisdiction filed by Communities in School Southeast Texas (CISSET) and Karen Newton (Newton) (collectively "appellees" or "defendants") and dismissing appellants' claims with prejudice. On appeal, appellants argue the trial court erred

1

because their common-law claims of breach of contract and fraud are not governed by the Texas Commission on Human Rights Act ("TCHRA" or "Chapter 21" or "the Act") and that the claims against Newton should not have been dismissed because the TCHRA creates a cause of action only against an employer and not against supervisors or individual employees. *See* Tex. Lab. Code Ann. § 21.001-21.556 (West 2006 & Supp. 2014). Finding no error, we affirm the trial court's judgment granting defendants' plea to the jurisdiction and dismissing plaintiffs' claims with prejudice.

## THE TCHRA

The TCHRA makes it unlawful for an "employer" to retaliate "against a person who, under [Chapter 21]: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." Tex. Lab. Code Ann. § 21.055 (West 2006). The discriminatory practices made unlawful under the Act include adverse employment decisions based on race, color, disability, religion, sex, national origin, or age. *Id.* § 21.051. Once a plaintiff files a proper charge of discrimination, the plaintiff must file a lawsuit no later than two years after the charge is filed, or else the suit is barred. *Id.* § 21.256.

> The [T]CHRA was enacted to address the specific evil of discrimination and retaliation in the workplace. Tex. Lab. Code

§ 21.001(4). By enacting the [T]CHRA, the Legislature created a comprehensive remedial scheme that grants extensive protections to employees in Texas, implements a comprehensive administrative regime, and affords carefully constructed remedies. These protections and related restrictions are expressly extended to public employees.

    . . . .

In the [T]CHRA, . . . the Legislature created unique and comprehensive provisions for external administrative review, alternative dispute resolution, and exhaustion of administrative remedies. *See* Tex. Lab. Code §§ 21.201-.211. Most significantly, the Texas Workforce Commission civil rights division, a stand-alone commission specifically dedicated to curbing unlawful workplace bias, investigates the complaint and determines whether there is reasonable cause to believe the employer violated Texas anti-discrimination law, and if so, attempts to resolve the matter "by informal methods of conference, conciliation, and persuasion." *Id.*§§ 21.0015, .003, .207(a). These extensive investigation and resolution procedures are designed to favor conciliation over litigation, and noncompliance deprives courts of subject matter jurisdiction. *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 485-88 (Tex. 1991).

*City of Waco v. Lopez*, 259 S.W.3d 147, 153-54 (Tex. 2008).

UNDERLYING FACTS

Woods' Employment and Complaints.

According to the record, Woods was employed at CISSET from May 2002, until the termination of her employment in May 2010. On November 3, 2009, Woods filed a grievance with CISSET, wherein she alleged the following: "[c]ircumventing my authority with the campus staff; [n]ot being allowed to

3

perform duties as the Program Coordinator[; and] [b]eing overloaded with other jobs that limit me from doing my primary job as PC."

On February 2, 2010, Woods filled out and filed an Intake Questionnaire with the Equal Employment Opportunity Commission (EEOC) in which she alleged that she had an employment discrimination claim that was based on race and retaliation of her employer, CISSET and "Dr. Karen Newton, Executive Director." She explained on the EEOC questionnaire that she had complained to the supervisor for referring to her as "gal[,]" and that in a grievance filed against Newton by an employee supervised by Woods, Woods had refused to support and take Newton's side against the other employee. Woods further stated that, since the time she filed her complaints, she had been "retaliated against by [her] supervisor," and that she was not being allowed to perform her job duties or attend "meetings relative to [her] job[,]" and that her supervisor was trying to get her "reassigned." Woods attached a written statement providing the following additional information:

> In September 2009, Dr. Karen Newton became the Executive Director of Communities In Schools SETX.
>
> Even though she owned a vehicle, she always had me drive her around to the campuses like I was her chauffeur. She never once suggested that we use her car. It was similar to "Driving Mrs. Daisy." This is also when she began to refer to all of the black women that worked under her within the program as "gal[."] I requested a meeting

4

with [] the Dr. Newton in October 2009 and informed her that I did not like being call [*sic*] girl. She stated it must be our "cultural differences[."] This is when the retaliation began. In that in [sic] November another staff person filed a grievance against Dr. Newton for being reassigned. Since I did not side with Dr. Newton, this only made matters worse for me. She continued to exclude me from meetings, prohibited [*sic*] from performing my job duties, circumvented my authority with staff that I supervise, added other jobs to me that other staff was getting paid to perform, made implications about me regarding the previous administration, and has attempted to get me reassigned. The workplace has become a hostile working environment for me.

Woods filed another grievance dated February 15, 2010, wherein Woods claimed harassment, retaliation for participation in a grievance, and other violations or misapplications of policy. In this grievance she stated that "[a]n EEOC complaint was filed on February 2, 2010[,]" and "[t]his grievance is an addendum to the grievance that was filed November 3, 2010[.]" Woods complained that she was being retaliated against because she was "performing duties as EEOC representative by facilitating grievance" filed by another employee.

On April 30, 2010, Woods filed yet another grievance, wherein she again described the nature of her complaint as harassment, retaliation for participation in a grievance, other violations or misapplication of policy, and unfair treatment by management. She claimed she was being retaliated against due to her performing duties as the supervisor of Prater by facilitating the beginning stages of Prater's

grievance. On May 11, 2010, Woods continued to describe the nature of her grievance as based on dismissal, retaliation for participation in grievance, other violations or misapplication of policy, and other unfair treatment by management.

Woods signed a "Charge of Discrimination" which was filed with the Texas Workforce Commission civil rights division (TWC) and EEOC on July 22, 2010. Woods checked the box indicating she was discriminated against based on race and retaliation from September 2009 to May 2010. She alleged the following:

> I have been an employee of this facility since about May 7, 2002. During my employment as a Case Aide, Campus Site Director, Cluster Leader, Trainer, and Program Coordinator, I have not had any critical performance issues. However, in September 2009, Karen Newton, became the Executive Director of Communities and had supervisory authority over me. During the following periods I was subjected to a hostile work environment, harassment, and different terms, condition and privileges of employment by selecting me to chauffer her around as if I were her personal driver. During these periods she would refer to me and other Black colleagues as gals. I made her aware of the offensive nature of several incidents but she only regarded it as cultural differences. I was subjected to retaliation around November 2009 when another colleague filed a complaint about Newton in which I provided information about offensive incidents. I was written up, denied my duties and excluded from required staff meetings, suspended, and then terminated in May 2010.

> I believe that I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended because of my race, Black and subjected to retaliation because I opposed protested [*sic*] against discriminatory acts and conduct.

6

On August 5, 2010, Newton received a Notice of Charge of Discrimination from the District Director of the EEOC notifying Newton that Woods had filed a charge of employment discrimination based on race and retaliation against CISSET.

Prater's Employment and Complaints.

Prater was employed as a Campus Director at CISSET, and she was a subordinate to Woods. Prater was employed with CISSET from July 1999, until the termination of her employment in April 2010. On April 15, 2010, Prater filed a grievance with CISSET wherein she alleged "other violation or misapplication of policy" and "educational intimidation" regarding Newton's handling of staff meetings and company policies in March and April of 2010. On April 23, 2010, Prater filed another grievance with CISSET alleging "retaliation for participation in grievance[,]" "misapplication of policy[,]" "other unfair treatment by management[,]" and "educational intimidation[.]" She complained of the handling of her earlier grievance and of her suspension. On May 12, 2010, Prater filed a grievance alleging "dismissal[,] "retaliation for participation in grievance[,]" "misapplication of policy[,]" "other unfair treatment by management[,]" and "educational intimidation[.]" She complained of the events surrounding her suspension and termination.

On July 29, 2010, Prater completed an Equal Employment Opportunity Intake Questionnaire in which she alleged employment discrimination based on race and retaliation. She alleged that Newton suspended her due to the grievances she had filed and then terminated her employment in the middle of the grievance process. Prater also alleged that Newton called her a derogatory term and that Newton overlooked Prater due to Prater's "lack of degree."

On September 3, 2010, Prater signed and filed a Charge of Discrimination with the TWC and the EEOC. Prater alleged discrimination based on race and retaliation. She stated the following:

> I began my employment on July 6, 1999 as an Administrative Assistant. On March 2003, I was promoted to Campus Site Director. Over the course of time, I was harassed by the Executive Director, Karen Newton (white), for not holding a 4 year degree. Ms. Newton referred to . . . African Americans as 'gal'. On October 16, 2009, I was overlooked to conduct interviews because I did not hold a 4 year degree.

> On April 16, 2010, I filed a grievance for writing a statement on a document that I was asked to complete. The completion of the document in the timeframe allotted was unethical. I was suspended for twelve days for filing a grievance and on April 27, 2010, I was terminated by Ms. Newton for filing a grievance.

> I believe I was discriminated against because of my race (African American) and retaliated against for filing a grievance, in violation of Title VII of the Civil Rights Act of 1964, as amended.

First Lawsuit and Dismissal of Suit in the 172nd District Court.

On November 29, 2010, Woods and Prater filed an Original Petition asserting claims against CISSET, Newton, and Judy Nichols. The suit was assigned to the 172nd Judicial District Court of Jefferson County, Texas. In their petition, Woods and Prater sought declaratory and injunctive relief, as well as damages. In their amended petition filed on June 19, 2012, Woods and Prater asserted causes of action for declaratory relief, tortious interference with a business relationship, and discrimination and retaliation under Chapter 21 of the Texas Labor Code. On November 14, 2012, their suit was dismissed for want of prosecution.

Second Lawsuit and Granting of Plea to the Jurisdiction.

On March 4, 2013, and after the expiration of the mandatory filing deadline for a Chapter 21 lawsuit,[1] Woods and Prater filed a second lawsuit against CISSET and Newton, which was assigned to the 136th Judicial District Court of Jefferson County, Texas. In their Original Petition, Woods and Prater asserted that their claims were for fraud and breach of contract arising out of the termination of their

_____

[1]Because Woods filed her charge of discrimination on or about July 22, 2010, the last day Woods could file a Chapter 21 lawsuit within the limitations period was July 22, 2012. *See* Tex. Lab. Code Ann. § 21.256 (West 2006). Because Prater filed her charge of discrimination on or about September 3, 2010 , the last day Prater could file a Chapter 21 lawsuit within the limitations period was September 3, 2012. *See id.*

9

employment with CISSET. The plaintiffs included allegations that, among other things, Newton had referred to only the African American female employees "by the historically racist-tinged word 'gal'" and commented on the "difference in cultural backgrounds[,]" that Newton retaliated against them after they filed grievances, and that Newton conspired with another employee to misrepresent the facts in order to justify Woods' termination, defendants made numerous misrepresentations, the plaintiffs relied on the misrepresentations to their detriment, and the misrepresentations caused plaintiffs to suffer substantial damages. Plaintiffs also alleged that defendants entered into a contract with plaintiffs and breached that contract, resulting in plaintiffs' deprivation of the benefit of their employment contract.

CISSET and Newton filed an answer entering a general denial and asserting certain defenses. CISSET and Newton also filed a plea to the jurisdiction alleging that Plaintiffs' claims for breach of contract and fraud are preempted by Chapter 21 of the Texas Labor Code and must be dismissed. Woods and Prater filed a response to the plea to the jurisdiction, asserting that the TCHRA is not the exclusive remedy for employment discrimination, the TCHRA does not preempt employees from asserting common-law causes of action, and the plaintiffs have not brought their actions under Chapter 21. Defendants filed a reply to plaintiffs' response to

10

the plea to the jurisdiction. Woods and Prater subsequently filed a First Amended Original Petition.

At the hearing on the plea to the jurisdiction, plaintiffs' counsel requested leave to file a Second Amended Original Petition. The trial court granted the request, but also allowed the defendants to supplement their pleadings with copies of the grievances. In comparison to the earlier petitions, Plaintiffs' Second Amended Original Petition omitted some of the wording specifically describing racial allegations, and added "[t]his lawsuit is NOT about the type of 'retaliation' or 'discrimination' statutorily proscribed by [Chapter 21]." Plaintiffs attached a copy of their grievances and alleged that "[d]uring the periods of their respective employments by CISSET, Plaintiffs respectively filed various workplace Grievances, none of which complained of statutorily proscribed race discrimination, and harassment[.]" Plaintiffs also attached affidavits in which Woods and Prater each attested to the following:

> . . . I am the Plaintiff in Cause No. D194188, 136th District Court, Jefferson County. The Exhibits attached to the Plaintiffs Second Amended Original Petition which purport to be grievances, both internal and external which I filed against CISSET are true and correct copies of grievances, both internal and external which I filed against CISSET. Further, the Exhibits attached to the Plaintiffs Second Amended Original Petition which purport to be related to my application for Unemployment Compensation [*sic*] CISSET are true and correct copies of documents which are related to my application for Unemployment Compensation against CISSET.

11

> I never believed or claimed in any internal grievance at CISSET that I was being subjected to race, or gender, or national origin, or age—any illegal Title VII discrimination by CISSET.

Both Woods and Prater also stated in their respective affidavits that they thought or hoped that an EEOC investigation would reveal the reason for the termination of their employment. Plaintiffs filed a supplemental response to defendants' plea to the jurisdiction, and plaintiffs asserted that their amended petition and evidence demonstrated that their claims are not preempted by Chapter 21.

The trial court granted the Defendants' Plea to the jurisdiction. The trial court issued a letter ruling explaining the basis of its decision.[2] According to the letter, the trial court relied on *Waffle House*, *Lopez*, and *Pruitt*, and concluded the plaintiffs' causes of action are preempted by Chapter 21 of the Texas Labor Code, and plaintiffs cannot replead to avoid the exclusivity of Chapter 21. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796 (Tex. 2010); *City of Waco v. Lopez*, 259 S.W.3d 147 (Tex. 2008); *Pruitt v. Int'l Ass'n. of Fire Fighters*, 366 S.W.3d 740 (Tex. App.—Texarkana 2012, no pet.). The trial court signed an order granting defendants' plea to the jurisdiction, and dismissing plaintiffs' claims for breach of contract and fraud with prejudice.

---

[2]Letter rulings do not constitute formal findings of fact. *Cherokee Water Co. v. Gregg Cnty. Appraisal Dist.*, 801 S.W.2d 872, 878 (Tex. 1990).

Plaintiffs filed a motion for new trial asserting that plaintiffs should not be subjected to "gotcha" tactics for "flirt[ing] with liability under more than one legal theory" and that "[t]he Court erred in granting the Plea to the Jurisdiction because there is a dispute[d] fact issue about whether Plaintiffs' common[-]law causes of actions are intertwined with those that would support the statutory remedies of Chapter 21 of the Texas Labor Code, and the fact should be submitted to the jury." Defendants filed a response to the motion and argued the motion fails to establish good cause to set aside the judgment, the facts alleged and the evidence presented in the motion had already been considered by the trial court when it signed the judgment, and plaintiffs' bases for a new trial are legally improper. After plaintiffs filed a reply to defendants' response, the motion for new trial was overruled by operation of law, and plaintiffs appealed.

STANDARD OF REVIEW

A party may challenge the absence of subject-matter jurisdiction through a plea to the jurisdiction—a dilatory plea used to defeat the alleged claims without regard to whether they have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). "The purpose of a dilatory plea is not to force [a] plaintiff[] to preview [its] case on the merits but to establish a reason why the merits of the plaintiff['s] claims should never be reached." *Id.*

13

Because jurisdiction is a question of law, we review the trial court's ruling on a plea to the jurisdiction de novo. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). We review the trial court's ruling to determine whether facts have been alleged that affirmatively demonstrate jurisdiction in the trial court. *Lopez*, 259 S.W.3d at 150; *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The burden of alleging such facts falls to the pleader. *Miranda*, 133 S.W.3d at 226. Absent an allegation that the plaintiff's jurisdictional pleadings are fraudulent, the court must take the allegations in the petition as true and must construe them liberally in favor of the plaintiff when ruling on the plea. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). However, when deciding a plea to the jurisdiction, a court "is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Blue*, 34 S.W.3d at 555. We will affirm the trial court's dismissal order on any legal theory supported by the record. *Pruitt*, 366 S.W.3d at 746 (citing *Seaman v. Seaman*, 425 S.W.2d 339, 341 (Tex. 1968)).

### ANALYSIS

Appellants contend in their first issue on appeal that their breach of contract and fraud claims were not governed by the TCHRA and the trial court improperly

14

granted appellees' plea to the jurisdiction. Appellees argue that appellants' claims against appellees "are and always have been race discrimination and retaliation claims[,]" and that "[u]pon realizing that their claims for race discrimination and retaliation were time-barred and determining that such claims were not meritorious, Appellants attempted to keep their claims alive by recasting them as common law-claims for breach of contract and fraud."[3]

In *City of Waco v. Lopez*, the Texas Supreme Court held that a public employee pursuing a state statutory remedy for retaliation arising from the employee's complaints pertaining to alleged age and race discrimination may only recover under the TCHRA and he could not bring a claim under the Whistleblower Act. 259 S.W.3d at 149. Although Lopez did not invoke Chapter 21 in his pleadings, the Court held that Chapter 21 was the employee's exclusive remedy because it provided a more "specific and tailored" remedy. *Id*. at 156. The Court explained that "the touchstone is not availment, but availability of [Chapter 21] remedies." *Id.* at 151. Because Lopez's claims could have been raised under Chapter 21, the court found that a plea to the jurisdiction should have been granted. *Id.* at 156. The Court noted that to hold otherwise would allow a plaintiff to skirt

---

[3]The statute of limitations for an action for breach of contract or fraud is four years from the day the action accrues. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (West 2002).

15

the TCHRA's detailed substantive and procedural provisions and would render the limitations in the TCHRA utterly meaningless. *Id.* at 154.

In *Waffle House, Inc. v. Williams*, Williams sued her employer, Waffle House, Inc., for sexual harassment under the TCHRA and for common-law negligent supervision and retention. 313 S.W.3d at 798. The jury found in favor of Williams on each of her claims and Williams elected a recovery under common-law which afforded her a greater monetary remedy. *Id*. The Second Court of Appeals affirmed the judgment. *Id.* at 801. Waffle House sought review from the Texas Supreme Court, arguing, among other things, that Williams' negligent supervision and retention claim should fail as a matter of law because the TCHRA is the exclusive remedy for workplace sexual harassment. *Id.* at 801-02. The Texas Supreme Court agreed and held that "[t]he gravamen of Williams' complaint is sexual discrimination in the form of a hostile or abusive work environment, a wrong the TCHRA was specifically designed to remedy." *Id.* at 809. The Court pointed out that this holding was consistent with its earlier holding in *Lopez*:

> As in *Lopez*, Williams' common-law claim "falls squarely within the [T]CHRA's ambit," that Act "implements a comprehensive administrative regime, and affords carefully constructed remedies," and allowing the alternative remedy "would render the limitations in the [T]CHRA utterly meaningless" and "defeat the [T]CHRA's comprehensive statutory scheme." As with permitting a Whistleblower Act claim, permitting a common-law claim for negligent supervision and retention would allow plaintiffs to pick and

16

choose among "irreconcilable and inconsistent regimes," one specific and one more general, the result being that "employees would have little incentive to submit to the administrative process the Legislature considered necessary to help remedy discrimination in the workplace. Such a result would frustrate clear legislative intent." While *Lopez* considered whether another statutory remedy would thwart the TCHRA, similar concerns exist if a plaintiff is permitted to pursue a common-law remedy in lieu of the Legislature's tailored and balanced statutory scheme.

*Id.* at 807-08 (footnotes omitted).

In *Pruitt v. International Association of Fire Fighters*, Michael Pruitt filed suit against the International Association of Fire Fighters labor union, a local affiliate association, and the certain officers and directors of the local association, after his employment was terminated. 366 S.W.3d at 742. Pruitt was the first African-American Fire Chief in Longview, Texas. *Id*. Pruitt alleged causes of action for "[i]ntentional[l]y [a]iding or [a]betting [d]iscrimination," intentional infliction of emotional distress, . . . breach of fiduciary duty, and tortious interference with employment relations." *Id*. Pruitt's claims were dismissed for lack of subject matter jurisdiction. *Id*. The trial court ruled, in part, that Pruitt's common-law claims were pre-empted by Chapter 21. *Id.* Pruitt appealed and argued that the trial court erred in dismissing his claims of intentional infliction of emotional distress, breach of fiduciary duty, and tortious interference with employment relationship and that, as an alternative to dismissal, the trial court

17

should have allowed him to amend the complaint by removing references to the alleged discrimination. *Id*. at 742, 747.

The Texarkana Court of Appeals concluded that the facts giving rise to Pruitt's common-law causes of action were "inextricably intertwined" with the facts giving rise to complaints that could have been resolved through Chapter 21's administrative procedures. *Id.* at 749-50. The Court stated that "a racial discrimination complaint was the gravamen of Pruitt's action and that allowing his complaint to proceed without meeting the requirement of exhaustion of remedies would 'collide with the elaborately crafted statutory scheme.'" *Id.* at 750.

According to appellants, their claims are "nothing like the claims" in *Pruitt* or *Waffle House* that were found to be pre-empted by the TCHRA. Appellants assert on appeal that their claims were for breach of contract and fraudulent inducement and that the only reference to race was in the background facts of their Original Petition. They maintain that at the hearing on the plea to the jurisdiction as well as in "numerous briefs to the court," they explained to the trial court that there was "no race discrimination claim or discrimination retaliation claim." Appellants argue that appellees "mischaracterized Appellants' claims as discrimination claims in disguise[,]" and that appellants' affidavits confirmed "they never thought there was racial discrimination and never alleged that there

18

was." According to appellants, appellees relied on appellants' charges of discrimination filed with the EEOC and the prior lawsuit as a basis for their plea to the jurisdiction, and appellants claim they "abandoned that cause of action, and abandoned any claim or factual allegation of discrimination."

The trial court concluded that plaintiffs' common-law causes of action were "inextricably intertwined" with the facts giving rise to complaints that could have been resolved through Chapter 21. When the gravamen of a complaint is discrimination or retaliation and when common-law causes of action are based on the same course of conduct giving rise to a discrimination and retaliation claim, Chapter 21 will bar the claims. *See Waffle House*, 313 S.W.3d at 802-09. The gravamen of a claim is "'[t]he substantial point or essence of a claim, grievance, or complaint.'" *Pruitt*, 366 S.W.3d at 748 (quoting Black's Law Dictionary 770 (9th ed. 2009)). We examine the trial court's grant of a plea to the jurisdiction de novo. If the complained-of acts constitute a statutory violation of Chapter 21, those acts cannot also serve as the basis of an independent common-law claim. *See id.* (*citing Waffle House*, 313 S.W.3d at 813). "This is because Chapter 21 is pre-emptive when the actions forming the complained-of torts are entwined with the complained-of discrimination." *Id.* (citing *Waffle House*, 313 S.W.3d at 799).

Appellants' Original Petition included the following paragraphs referencing race:

9. Woods is an African American female who worked at CISSET from May 7, 2002 to April 30, 2010. At the time of her termination she was employed as the Program Coordinator at CISSET.

10. Prater is an African American female who worked for CISSET from around July 1999 to April 26, 2010. At the time of her termination she was employed as a Campus Director.

. . . .

12. Of the 29 employees at CISSET[,] all where [*sic*] African American except for Newton, Jennifer Stubbs ("Stubbs"), Janay Watson, and Etta Helveston ("Helveston").

. . . .

24. Newton would regularly refer to the African American female employees by the historically racist-tinged word "gal" and she would notably not use this word with non-African employees.

25. Newton also in a thinly veiled racial reference commented to Woods that, "she was not used to this culture." When Woods asked what culture she was referring to, Newton indicated the employees in the room which were all African American.

. . . .

27. . . . [O]n October 19, 2009, Woods requested a meeting with Newton, planning to raise issues about the importance of the chain of command, Woods' position as Program Coordinator, staff matters, paying for certain social work licenses, obtaining assistance with data entry, moving employees from campus to campus, and Newton's offensive practice of calling African-American females "gal." Newton apologized to Woods for calling her "Gal," stating that "it must be a difference in cultural backgrounds."

Appellees filed their plea to the jurisdiction asserting that plaintiffs' claims are "preempted by Chapter 21 of the Texas Labor Code and must be dismissed." Defendants attached, as exhibits to their plea to the jurisdiction, Plaintiffs' Original

20

Petition in the current case, plaintiffs' petitions from the former suit that had been dismissed for want of prosecution, the charges of discrimination filed by Woods and Prater and presented to the EEOC, and the dismissal order from the earlier suit. Appellants subsequently filed Plaintiffs' First Amended Original Petition, the live pleading at the time the trial court heard appellees' plea to the jurisdiction, which omitted some language in the Original Petition but still included the following:

9. Woods is an African American female who worked at CISSET from May 7, 2002 to April 30, 2010. At the time of her termination she was employed as the Program Coordinator at CISSET.

10. Prater is an African American female who worked for CISSET from around July 1999 to April 26, 2010. At the time of her termination she was employed as a Campus Director.

. . . .

12. Of the 29 employees at CISSET, all where [*sic*] African American with the exception of Newton, Jennifer Stubbs ("Stubbs"), Janay Watson, and Etta Helveston ("Helveston").

. . . .

28. On October 19, 2009, Woods requested a meeting with Newton, planning to raise issues about the importance of the chain of command, Woods' position as Program Coordinator, staff matters, CISSET reimbursing employees for certain social work licenses, obtaining assistance with data entry, moving employees from campus to campus, and Newton's offensive practice of calling African-American females "gal." Newton apologized to Woods for calling her "Gal," stating that "it must be a difference in cultural backgrounds." Still, Newton was clearly agitated with Woods['] challenge of the racially tinged term.

At the hearing on the plea to the jurisdiction, the following exchange occurred:

21

THE COURT: . . . [H]asn't the Supreme Court basically said that if it -- if the gravamen that would give rise to the common law cause of action is covered by Chapter 21, then it has to be brought pursuant to Chapter 21, haven't they?

[Plaintiffs' Counsel]: Well, that's been said; but that's not applicable here because the lawsuit facts that we have here, while they involve a lot of the same patterns and facts of the events that occurred, do not involve the same legal principles.

. . . .

The causes of action are not the same. . . . [W]hen the case was filed as a . . . Chapter 21 or a discrimination case in the court next door, it was filed there because of the fact that it was -- it was filed under that theory because it was not perceived at that time exactly how much influence or what was handled -- what was the weight and whether or not the motive of Newton and her board member counterpart, who are white, had influence over the board.

. . .

. . . The gravamen of the anti-retaliation claim, the contract claim, is not racial discrimination. It's not -- it's not retaliation for opposing discriminatory employment practices.

. . . This is not a discrimination claim. Doesn't arise out of discrimination. It was -- that was realized, and we filed within the four-year statute of limitations both of these actions. We're timely. The gravamen is not the same, your Honor.

. . .

[T]here is no statutorily related discriminatory employment practice which was opposed by my clients. It had to do entirely with the -- the management relationship between certain members of the administration of CISSET and my clients and had nothing to do with statutorily-regulated issues of national origin, age, race, gender or retaliation under the code.

. . .

THE COURT: Well, before we go any further, why in the background facts is it significant that Prater and Woods are African-American and that of the 29 employees all were African-American with the exception of one, two, three, four? I mean, that to me --

[Plaintiffs' Counsel]: That's a fact. That's a fact of life, your Honor. That was part of the facts of when I -- it's not mentioned with relevance to any cited cause of action, and no cause of action refers to that. That just happens to be the way I draft facts, background facts; and that was simply brought over. There is no rule that I know of in pleading that requires me to be race blind. In fact, I found that -- that it gives a better feel for the facts if something is -- to everybody who looks at it -- just to know who the players were. . . .

Defense counsel urged the trial court to compare the allegations in the pleadings in the case pending in the 136th Judicial District Court to plaintiffs' EEOC charges wherein they alleged discrimination on the basis of race and retaliation. According to defense counsel, "it's just impossible to separate the race discrimination facts and these now alleged policy or breach of contract type facts. They're just merely recasting their discrimination claims because . . . the statute of limitation has passed."

On appeal, appellants assert that *Perez v. Living Centers-Devcon, Inc.*, 963 S.W.2d 870, 871 (Tex. App.—San Antonio 1998, pet. denied), supports their contention that they are not precluded from asserting their common-law claims. In *Perez*, the San Antonio Court of Appeals held that the Perez's decision to not file a complaint with the Texas Commission on Human Rights did not preclude Perez from pursuing common law causes of action that arose from the same facts as her TCHRA claim. 963 S.W.2d at 875. We note that *Perez* was decided before *Lopez*, *Waffle House*, and *Pruitt*, and we find the facts in *Perez* to be distinguishable from

23

the facts in the present case. Woods and Prater, unlike Perez, previously filed a suit under the TCHRA, failed to timely pursue their TCHRA claims in court, and then refiled a suit recasting their claims as common-law claims with a four-year statute of limitations to avoid the two-year statute of limitations which barred their TCHRA claims.

Applying a de novo review and considering the evidence necessary to resolve the jurisdictional issue raised, the gravamen of the plaintiffs' claims in the present case is retaliation and discrimination controlled by the exclusive remedies under Chapter 21. We note that although plaintiffs amended their petition (after the hearing on the plea to the jurisdiction but with permission from the trial court), and also attached affidavits wherein plaintiffs attested that they "never believed or claimed in any internal grievance at CISSET that [they were] being subjected to race, or gender, or national origin, or age—any illegal Title VII discrimination by CISSET[,]" the documents they signed under penalties of perjury with the TWC and EEOC state otherwise. In the documents Woods and Prater filed with the TWC and EEOC, each of them stated that they believed they had been subject to racial discrimination and retaliation for assisting with or filing grievances. Where the gravamen of a plaintiff's case is TCHRA-covered discrimination or retaliation, Chapter 21 forecloses common law theories predicated on the same underlying

24

facts. The facts giving rise to plaintiffs' breach of contract and fraud claims in the present lawsuit are inextricably intertwined with the facts giving rise to their complaints of race discrimination and retaliation in their prior EEOC Charges of Discrimination and their prior lawsuit. *See Waffle House*, 313 S.W.3d at 804; *Pruitt*, 366 S.W.3d at 750-51. The trial court did not err in granting appellees' plea to the jurisdiction and dismissing appellants' claims against CISSET. Issue one is overruled.

In their second issue, appellants maintain that, because the TCHRA creates a cause of action only against an employer and not against supervisors or individual employees, the claims against Newton should not have been dismissed, irrespective of the preemption issue. In Plaintiffs' Second Amended Original Petition, the live petition at the time of the dismissal, plaintiffs pled that "Defendant, Karen Newton, is an individual who at all times relevant to this suit has been the Executive Director of CISSET" and that "Newton was not the employer of Plaintiffs." Plaintiffs filed their suit for "Breach of Contract by CISSET" and "Fraud by CISSET and Newton."[4]

---

[4]Although plaintiffs' allege in their Second Amended Original Petition that "Defendants" breached contracts with the plaintiffs, plaintiffs state in their reply brief on appeal that they "did not attempt to assert a breach of contract claim against Newton individually[.]"

"It is well established in Texas that an individual cannot be held personally liable under the TCHRA." *Winters v. Chubb & Son, Inc*., 132 S.W.3d 568, 580 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Jenkins v. Guardian Indus. Corp*., 16 S.W.3d 431, 439 (Tex. App.—Waco 2000, pet. denied) ("[S]upervisors and managers are not liable in their individual capacities for alleged acts of discrimination under the TCHRA."). The TCHRA does not create a cause of action against supervisors or individual employees for an unlawful employment practice. *City of Austin v. Gifford*, 824 S.W.2d 735, 742 (Tex. App.—Austin 1992, no writ).

A plaintiff may not recast her claim in the language of another cause of action to avoid limitations or compliance with mandatory statutes or to circumvent existing case law contrary to the plaintiff's position. *See generally Earle v. Ratliff*, 998 S.W.2d 882, 893 (Tex. 1999) (essence of plaintiff's claim was that defendant was negligent by not conforming to the applicable standard of care despite labeling claims as DTPA causes of action); *In re Kimball Hill Homes Tex., Inc*., 969 S.W.2d 522, 526 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding) (nature of claim controls and plaintiff cannot, by artful pleading, recast claim to avoid adverse effect of statute). The TCHRA affords public employees like Woods and Prater "a specific and tailored anti-retaliation remedy." *Lopez*, 259 S.W.3d at 156. The purposes and policies embodied in the TCHRA would be "thwarted" if Woods

and Prater could simply reframe their disputes as a fraud or breach of contract claim to "sidestep" the requirements of the TCHRA. *Id*. at 155. We conclude that the trial court properly dismissed plaintiffs' claims against CISSET and Newton. Issue two is overruled. We affirm the trial court's judgment granting defendants' plea to the jurisdiction and dismissing their claims with prejudice.

    AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on October 15, 2014
Opinion Delivered May 21, 2015

Before McKeithen, C.J., Horton and Johnson, JJ.